[Civ. No. 32468.   Second Dist., Div. One.   July 24, 1968.]

ROBERT D. SWEENEY, SR., Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD, FREDRICK-SON & WATSON CONSTRUCTION COMPANY et al., Respondents.

Silver & McWilliams and Edwin Silver for Petitioner.

Everett A. Corten, Edward A. Sarkisian and Sheldon M. Ziff for Respondents.

WOOD, P. J.—This is a petition for review and annulment of an award of the Workmen's Compensation Appeals Board.

Petitioner Robert D. Sweeney sustained an injury to his low back, arising out of and occurring in the course of his employment; and about a year later, by reason of his physical condition due to the back injury, his right knee buckled as he was attempting to walk and he fell and injured his knee. The referee found that the injuries resulted in permanent disability of 82½ percent, and made an award based upon such percentage of disability. The employer and the insurance carrier filed a petition for reconsideration, alleging that the disability rating was excessive. The petition was granted, and upon reconsideration the Workmen's Compensation Appeals Board found that the injuries resulted in permanent disability of 64½ percent, and made an award based thereon.

Petitioner's position upon this review is that, upon reconsideration, the appeals board received and relied on additional evidence, namely, a physician's report, which under the circumstances herein was not proper evidence.

On September 3, 1963, and for approximately two years prior thereto, the petitioner Robert D. Sweeney was employed by respondent Fredrickson & Watson Construction Company as an operator of heavy mechanical equipment used for moving large quantities of dirt in road construction—such equipment as a skiploader, dozer, roller, and puller. On the date mentioned, while he was operating a skiploader its brakes failed and, in order to avoid going over a high cliff, he drove the loader over a curb, and the resulting bounce or jolt of the loader injured his low back.

After the accident he continued working about six weeks, but he could not stand the pain, and he quit working and took medical treatments for approximately a year. Then, under the recommendation of a physician who had been treating him, he worked approximately three weeks, but he has not worked since that time.

On November 30, 1963 (after he quit working for the first time), he consulted Dr. Spierer regarding the back injury and was given heat treatments, and then was referred to Dr. Wagner who made X-rays. Thereafter, about December 5, 1963, the petitioner was examined by Dr. Feldman, a physi-

cian designated by the insurance carrier, and was given physiotherapy treatments at a hospital for several days, was placed in traction, and later was immobilized in a plaster cast for approximately six weeks. The record herein includes seven reports made by Dr. Feldman at various times to and including July 28, 1965.

On February 4, 1964, petitioner was examined by Dr. Yamshon, at the request of petitioner. There are two reports herein by this physician.

On February 13, 1964, petitioner was examined by Dr. Loopesko, at the request of the insurance carrier. There are 23 reports herein by this physician.

About December 8, 1964, while petitioner was arising from a sofa at his home he felt a sudden severe pain in his low back and felt electricity shooting down his right leg, and then fell and injured his right knee.

On July 16, 1965, Dr. Feldman performed a lumbar laminectomy on petitioner, from "L-4 to S-1," removing a herniated disc. Immediately after the removal of the disc, Dr. Loopesko performed a spinal fusion on petitioner "between the spinous processes L-5 and S-1."

On July 15, 1966, Dr. Loopesko performed a meniscectomy on petitioner's right knee, removing a lateral meniscus. (Petitioner, in describing his knee condition prior to the surgery, said that he could feel something real hot coming from his back to his knee, that his leg was numb, and that when he walked his knee would pop and swell—at the side of the knee there would be a swelling or knot approximately the size of an egg.)

No question is involved here as to whether the knee injury was a part of the injury sustained at the time of the skiploader accident. It was stipulated at the hearing before the referee that petitioner "sustained injury arising out of and occurring in the course of his employment to his back and lower extremities."

Petitioner testified that about 98 percent of the time he felt some degree of hurting or discomfort in his back and legs; that the degree depended upon the amount of walking, stooping, or sitting that he does; the pain is increased when he walks 5 or 6 blocks or when he stoops or bends for 15 or 20 minutes; weight lifting causes more pain, and he will not try to lift anything that weighs over 15 pounds; he takes about 100 aspirin tablets a week.

Petitioner's right arm had been injured about thirty years ago, but no question is presented herein regarding that

injury. Dr. LeMonchek, who examined petitioner on June 13, 1966, at the request of the insurance carrier, stated in his report that the petitioner had "X-ray evidence of long standing discogenic disease involving the lower back of a severe degree" and that he believed that 50 percent of the disability should be ascribed for the pre-existing changes. The referee found that there was no basis for apportionment. The award made by the appeals board, upon reconsideration, did not provide for apportionment. No question of apportionment is involved on this review.

With regard to the extent of permanent disability, Dr. Loopesko, the insurance carrier's physician who performed the spinal fusion, and who had treated petitioner many times and made 23 written reports herein, stated in his report (January 12, 1967) that he believed that petitioner had reached a permanent and stationary level, and that his case should be terminated, and that there are many types of light work which the petitioner could do. Dr. Loopesko also said in his report (March 16, 1967) that petitioner "cannot do work which requires prolonged and steady walking or standing."

Dr. Yamshon said in his report (February 23, 1967) on the subject of permanent disability: "I do not believe that he is capable of doing more than sedentary type of work."

As above stated, the employer and insurance carrier petitioned the appeals board for reconsideration upon the ground that the disability rating of 82½ percent was excessive. The appeals board, in granting the petition for reconsideration, stated that a report from the Medical Bureau of the Department of Industrial Accidents would be of assistance in rendering a decision in the matter. Thereupon the board issued a document entitled, "Medical Examination Referral," which was directed to the medical bureau, asking it to "Review and file and give opinion without examination," as to the extent of permanent disability and as to apportionment.

Dr. Krepela, a medical examiner for the bureau, made a report to the appeals board wherein he stated: He reviewed the numerous medical reports in the file. He believed that the injury to the right knee joint was directly related to the back injury. He believed that the petitioner's complaints regarding the knee were "minimal to slight in degree for ordinary ambulation but probably becoming moderate in degree after prolonged weight bearing." He believed that the back injury was such as to limit petitioner to light work. If petitioner has recovered completely from a previous back injury, then there

is no basis for apportionment of the back disability to pre-existing degenerative changes in the spine.

The appeals board thereupn requested the rating bureau to recommend permanent disability rating based on injury to low back and right knee resulting in low back disability limiting the applicant to light work, and based on disability to right knee resulting in minimal to slight pain upon ordinary ambulation, becoming moderate in degree upon prolonged weight bearing. Upon that request, the rating bureau (acting through Mr. Hecht) recommended a permanent disability rating of 64½ percent.

The board made an order receiving Dr. Krepela's report and the rating report in evidence. Notice was given that the case would be submitted for decision within seven days unless good cause to the contrary was shown. The petitioner's attorneys objected to the reports, and requested a hearing in order to cross-examine Dr. Krepela and the rating representative, Mr. Hecht. The request of the attorneys was granted and the hearing was set for hearing in Long Beach before Referee Leaver.

Dr. Krepela testified in substance, as follows: He had read the medical reports which were in the file and had read the report of Referee Raynes which summarized the testimony at the original hearings. He had not examined the petitioner nor any of the X-rays pertaining to him. That in his medical practice, in examining patients, he had been able to acquire insight into the validity or invalidity of complaints of patients by their responses elicited in the course of the examination. Where there has been a removal of a spinal disc and has been surgery to correct a torn cartilage of the knee, the evaluation of pain would be based upon findings, upon clinical examinations of findings on X-rays, findings on various tests, as well as responses made during the course of examination.

Mr. Hecht, the rating specialist who recommended the second rating (64½ percent), testified that the expression "light work" appearing in instructions from the appeals board (requesting a rating based on disability limiting applicant to "liight work"), meant that the employee could be on his feet throughout a work day, assuming that there would be a lunch period and one or two coffee breaks when he can be off his feet, and that there would be little or no lifting or bending, and that there would be no climbing of ladders.

The minutes of the hearing before the referee state that

following cross-examination, counsel for applicant made a motion that the panel review the matter with a view toward determining whether the Labor Code and the Rules of Practice and Procedure, with respect to medical reports, had been complied with, in view of the fact that Dr. Krepela did not examine applicant nor see any X-rays.

At the close of the hearing, the matter was referred to the appeals board for its decision or further disposition.

The appeals board, in rendering its decision after reconsideration, relied upon Dr. Krepela's report. The board said, among other things: "We ·see no deprivation of due process and no legal impediment to resting our determination of the factual issue of nature and extent of disability attributable to the injury herein on Dr. Krepela's report." It made an award based upon the rating of 64½ percent (which rating, recommended by the rating bureau, was based upon Dr. Krepela's report.)

As above indicated, petitioner contends that the appeals board improperly received and relied upon the report of Dr. Krepela. He argues to the effect that the procedure followed by the board, in resting its decision as to disability on the report of a physician who had not examined the employee or the X-rays, was a denial of due process of law. The board argues that under section 5703, subdivision (b), it may appoint a physician from its medical bureau to give an opinion on factors determinative of permanent disability on the basis of other medical reports in the record without making an examination of the injured person.

Said section 5703 of the Labor Code provides, in part: "The appeals board may receive as evidence either at or subsequent to a hearing, and use as proof of any fact in dispute, the following matters, in addition to sworn testimony presented in open hearing: (a) Reports of attending or examining physicians. (b) Reports of special investigators appointed by the appeals board or a referee to investigate and report upon any scientific or medical question."

The argument of the board is, in effect, that Dr. Krepela was a special investigator appointed by the board, under subdivision (b) of said section 5703, to investigate and report upon a scientific or medical question. In the board's "Opinion and Decision After Recommendation" it was said, in part: "It was petitioners' [employer's and insurance carrier's] contention that the referee's finding as to extent of permanent disability caused by the injury of September 3, 1963 was

erroneous. In the light of Dr. Krepela's report, we are constrained to agree.'' It appears that the form of Dr. Krepela's report was the same as the usual and standard form of report made by an attending or examining physician, except that Dr. Krepela's report does not state that he examined the employee. His report may be described generally as a recital of the history of the employee's physical condition as Dr. Krepela understood it from the reports of other physicians who had examined the employee,—which recital was followed by Dr. Krepela's opinion as to the kind of work the employee was able to perform. The document whereby the file was referred to the medical bureau did not recite that anyone was appointed as an investigator to investigate a scientific or medical question. That document merely requested the medical bureau to review the file and give an opinion as to the extent of permanent disability. There was nothing in that request which would distinguish it from the usual general request that a physician give his opinion as to an employee's physical ability to work. As above shown, subdivision (a) of said section 5703 provides that reports of *examining* physicians may be received in evidence. It is also to be noted that section 5703.5 of the Labor Code provides: ''The appeals board may at any time after an application is filed and prior to the expiration of its jurisdiction, upon the agreement of a party to pay the cost, direct the injured employee to be examined by a doctor selected by the appeals board or agreed upon by the parties to report upon any medical question pertinent to any matter then at issue before the appeals board.'' Since the appeals board desired to have the opinion of a member of its medical bureau, it would seem that it would have proceeded under said subdivision (a) of said section 5703, or under section 5703.5, by directing a physician from its medical bureau to examine the employee and the X-rays. Those code provisions are the statutory authority for receiving in evidence the opinion of an attending or examining physician regarding the physical condition of an employee. ██ It is apparent that subdivision (b) of said section 5703, relative to reports of special investigators ''*upon any scientific or medical question,*'' was intended to serve a purpose other than that provided for in subdivision (a)—relative to reports of *attending* or *examining* physicians. If, as the appeals board asserts, the report of the non-attending or non-examining physician is admissible in evidence under subdivision (b) on the theory that the physician was a special investigator appointed to investigate a scientific or medical question, then

it would appear that subdivision (a), which provides specifically for receiving reports of attending or examining physicians, would serve no useful purpose—in that reports of all physicians, whether they were examining or non-examining physicians, would be admissible as reports of special investigators of scientific or medical questions. Certainly subdivision (b) was not intended to provide a method whereby a non-examining physician's report, on the general subject of pain and physical disability of a certain person, might be received in evidence on the theory of its being scientific or medical information obtained by research and investigation. A report of an investigator under subdivision (b) is not an optional substitute for a report of an examining physician under subdivision (a).

Usually a scientific or medical question is one "where the truth is occult and can be found only by resorting to the sciences," and where the issue is exclusively a matter of scientific or medical knowledge. (See *Peter Kiewit Sons* v. *Industrial Acc. Com.*, 234 Cal.App.2d 831, 838 [44 Cal.Rptr. 813].) ■ The question as to whether a person has pain, to the extent that he cannot work, is not one which can be determined only by resorting to sciences. That question may be determined upon the testimony of the person alone. (*Employers' etc. Corp.* v. *Industrial Acc. Com.*, 42 Cal.App.2d 669, 671 [109 P.2d 716].) While such an issue is of a medical nature, it is not a scientific or medical question within the usual acceptation or understanding of that expression. In *Employers' etc. Corp.* v. *Industrial Acc. Com., supra,* it was said: "[T]he injured person naturally was in the best position to tell whether he was suffering pain." It is reasonable, of course, to conclude that an investigation or inquiry as to the extent of disability suffered by a certain individual would include physical examination and questioning of the injured person. In this connection it is to be noted, from Dr. Krepela's testimony, that also it has been his experience in his medical practice, while examining patients, that he had acquired insight regarding the validity or invalidity of their complaints from *their responses during the examination.* ■ In the present case, as above stated, it is apparent that the appeals board did not request the medical bureau to make an investigation, but it merely asked it to review the file and, without examination, give an opinion as to the extent of disability. Dr. Krepela's report was not an investigator's report within the meaning of subdivision (b) of said section 5703.

The appeals board, in granting the petition for reconsideration, stated that a report from the medical bureau would be of assistance in rendering a decision. The board, of course, could have directed a physician from the medical bureau to give an opinion as to disability after having examined the employee. Even though it did not request such an examination, it was empowered to call upon a physician from the bureau to assist the board in formulating a new or different statement of disability factors, based upon the medical evidence in the then existing record, to be submitted to the disability rating specialist. The report of Dr. Krepela did not purport to be such a restatement of disability factors, but it was Dr. Krepela's opinion, made without examination of the employee, as to the physical condition of the employee. His opinion was different from the opinions of the two physicians who had examined the employee and had given opinions as to his disability. Dr. Loopesko, a physician furnished by the insurance carrier, said that there were several types of light work which the employee could do but he could not do work which requires prolonged and steady walking and standing. Dr. Yamshon said that the employee could not do more than sedentary type of work. Dr. Krepela said that the employee's back injury was such as to limit the employee to light work. After receiving Dr. Krepela's report, the appeals board requested the rating bureau to recommend a rating based on disability limiting the employee to "light work." The rating specialist, Mr. Hecht, who made the disability rating of 64½ percent, based upon disability factors submitted by the appeals board, said that "light work" meant that the employee could be on his feet throughout a day, assuming there was time for lunch and coffee breaks when he could be off his feet and that there would be little or no lifting or bending, and no climbing. It thus appears (1) that the two examining physicians, whose opinions were in the record before the referee, said, in effect, that the employee could not do work which required prolonged walking or standing; and (2) that the opinion of non-examining physician, Dr. Krepela, wherein he said that the employee was limited to light work, meant (in view of the meaning of "light work" as applied by the rating bureau) that the employee could do work which required him to be on his feet during the day, except for lunch and coffee breaks, provided there was no lifting, bending, or climbing.

In *Allied Comp. Ins. Co.* v. *Industrial Acc. Com.*, 57 Cal.2d 115 [17 Cal.Rptr. 817, 367 P.2d 409], the referee formulated a

statement of disability which was rated 32½ percent. Upon reconsideration the panel informally secured from the rating bureau information as to ratings that would be recommended if various factors of disability were included in the disability statement. The panel then formulated a new disability statement which was rated 77 percent and the insurer was given an opportunity to cross-examine the rating specialist and to present rebuttal evidence. The rating specialist testified that the difference between the first and second ratings was upon the basis that in the second statement there was a limitation to sedentary work. One of the medical reports stated that the applicant probably could do some sedentary work but that anything requiring prolonged standing, lifting, or bending would not be feasible for an indefinite time. The other medical reports indicated that the disability was less severe and that the applicant was not so narrowly limited occupationally. The award was upheld on the basis that there was medical evidence to support it, the insurer had had an opportunity to cross-examine and present rebuttal evidence, and the panel had made an independent examination of the record.

In the present case, in contrast to the *Allied* case, it appears that there was no medical evidence in the record to support the finding that the extent of disability was less severe than that found by the referee, except for the opinion of Dr. Krepela.

The appeals board asserts that its procedure herein, in using Dr. Krepela's opinion, was similar to the procedure of receiving the opinion of an expert witness based upon a hypothetical question—even though the witness could not testify to the evidence upon which he bases his opinion. In the present case, there was no hypothetical question, and furthermore it is to be noted that Dr. Krepela stated that he did not consider all the medical evidence, that is, he did not see the X-rays.

The report of Dr. Krepela should not have been received in evidence.

The award is annulled and set aside, and the matter is remanded to the Workmen's Compensation Appeals Board for further proceedings in accordance with this opinion.

Lillie, J., and McCoy, J. pro tem.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.