[L.A. No. 29846. In Bank. June 10, 1971.]

CLAUDE REDNER, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
CALIFORNIA WHOLESALE ELECTRIC COMPANY et al.,
Respondents.

COUNSEL

S. S. Schwartz and Alan G. Barry for Petitioner.

Rupert A. Pedrin and Lionel K. Hvolboll for Respondents.

OPINION

**TOBRINER, J.** — Although the referee in this workmen's compensation case found upon an abundant showing that the applicant suffered a 57

percent disability, the appeals board granted reconsideration and held that applicant should receive nothing for permanent disability. The board rested its decision upon some motion pictures, deceitfully procured by the insurance carrier, which showed the applicant riding horseback. We shall point out that we cannot uphold the ruling since (1) the film had been deliberately withheld from the prior proceedings and improperly produced at the hearing on reconsideration, at which hearing applicant was denied the right to cross-examine and to present rebuttal testimony, and (2) the film was the product of the insurer's deceitful conduct and therefore entitled to no weight in such reconsideration. If the board could not properly rely upon the film and the medical reports based upon it, the decision obviously falls, but even if the board could do so, the decision still lacks evidentiary support.

## 1. *The facts.*

Applicant worked for the California Wholesale Electric Company as a driver of a two-ton truck and as a deliveryman in Los Angeles. He handled various cartons weighing from a few ounces to 1,500 pounds. Although applicant used a fork lift for very heavy crates, the work frequently required him to lift by hand boxes weighing 150 pounds. On April 24, 1967, while in the course of his employment, applicant undertook the unloading of about 15 cartons, each of which weighed between 50 and 60 pounds. When he lifted the last box and turned toward the loading dock, applicant felt a snap in his back; his spine and legs went numb; his left arm seemed to go to sleep, and he fell. Later, the superintendent asked him whether he needed a doctor, but applicant said he would be all right if he went home and took a hot bath.

The next day applicant could not rise from his bed without assistance. Upon examination of applicant at the Pico-Rivera Emergency Hospital the attending doctors returned him to his job. After attempting to work for one and a half days, applicant once more went to the hospital; there he was put into traction for at least a month; he underwent a lumbar laminectomy and spinal fusion in which one disc was removed. Released from the hospital in June 1967, applicant was able to walk with a lumbosacral support and cane, but continued to experience severe back pain, headaches, certain neurotic reactions, weight loss, and occasional loss of bowel control.[1]

From the time of the industrial accident the employer's workmen's com-

---

[1] Early in July 1967 at home applicant fell; he was hospitalized for another 17 days. When applicant, then 34 years old, returned from the hospital, his parents brought him to their retirement home where he has since remained. He continued to receive periodic medical examinations and treatment for his back condition.

pensation carrier, Hartford Accident and Indemnity Company, paid applicant temporary disability compensation, but in the summer of 1968 that company retained James F. Curtis Investigations to probe into applicant's claim. Curtis employed Joseph Chavez to observe applicant in his daily activities and to take motion pictures of his conduct.[2]

In early July 1968 a person who told applicant that his name was Robert Hendry befriended applicant and invited him to his ranch for the following weekend; applicant accepted. Hendry drove applicant to this ranch; there Hendry gave a small party, serving very little food but a great number of mixed drinks. The guests became inebriated. Hendry suggested that the party go horseback riding, and applicant joined the others in doing so.

During the riding and saddling of the horses, Chavez concealed himself in Hendry's barn and took about 350 feet of film. The motion picture shows applicant saddling, riding, walking, and unsaddling a horse. Thereafter, on the next day applicant rode again. Unobserved by the riding party, Chavez took more motion pictures of applicant's activities.[3] On the basis of the film the insurance carrier ceased payment of temporary disability compensation on August 6, 1968, and refused to provide further medical care for applicant.

After the riding episode, applicant, upon arriving home and sleeping that night, could not arise the next day because of severe pain in his back. Recuperating at home, applicant remained largely in bed for three weeks. Then in September 1968 he found his first employment since the industrial injury. He obtained part-time work as a relief cook performing this job for about three months until the employer no longer needed him. Thereafter he worked as a carpenter's helper and as a bartender but was unable to continue either employment because of back and leg pain. In July 1969 he began working as a janitor at $1.65 per hour for a restaurant and remained at that employment until the restaurant closed shortly before the referee's hearing in October 1969.

On September 25, 1968, the insurance carrier asked Dr. Crandall to

---

[2]Chavez first observed applicant on June 16, 1968, loading a pickup truck with camping supplies and driving the truck. Although Chavez followed applicant to his destination and stayed for two days, he did not observe applicant again on that occasion and did not take any motion pictures.

[3]The insurance carrier's attorney later summarized the content of the films: "The pictures were over two days. I don't think the activity was strenuous or severe, but it did show that the applicant is willing to move. The applicant could work; if he could be as active as the pictures depict, it would appear he is not as disabled as he would have us believe. The pictures cover two days. The pictures on the second day show as much activity as the first day, which should indicate, I believe, that the activity on the first day didn't disable him to any degree."

view the film of the horseback riding. Although he had not examined applicant for nine months, Dr. Crandall concluded that applicant "does not show the slightest evidence of any residual disability and should be able to perform gainful occupation satisfactorily, as evidenced by the films of July 18 and 19, 1968." On September 28, 1968, Dr. Perlson also viewed and described the motion picture films. Having examined applicant only once seven months previously, the doctor reported to the insurance company: "As a result of viewing the above films, it is my feeling at this time that this employee is not physically or mentally incapacitated in any way as a result of the alleged injuries sustained by him on April 25, 1967."

On June 3, 1969, Dr. Coulter, a neurological surgeon, examined applicant, reviewed the medical reports, and concluded that applicant had become "disabled from his usual employment as a truck driver, however, he is able to perform gainful employment at duties which do not require repeated bending and lifting, in fact the patient is working and has been doing light tasks since September 1968 at Big Bear, California. . . . I would recommend that he avoid occupations in which repeated bending and lifting objects over fifty pounds is required, and that because of the slight objective weakness in his right lower extremity that he avoid occupations which require climbing ladders or to heights."

At the referee's hearing applicant testified as to the circumstances of the injury, his attempts to obtain employment since the injury, the horseback riding incident, and his physical condition. The insurance carrier neither introduced the film nor any medical report concerning it nor the testimony of the two private investigators who worked on the film. At the conclusion of the hearing, however, the referee granted the insurance carrier an opportunity to present further medical reports within 10 days. Within that period the insurance carrier for the first time offered the September 1968 medical reports of Dr. Crandall and Dr. Perlson which recounted the content of the motion picture film. The carrier still failed to offer the film itself or any investigator's report concerning the riding incident. Upon applicant's attorney's strenuous objection to the admission of the medical reports, the referee refused to admit them into evidence.

On the basis of the evidence adduced at the hearing the referee rated the applicant's permanent "disability precluding more than light work" as 57 percent; he ordered the insurance carrier to pay the applicant's surgery bill which it had previously refused to cover; he found the applicant needed further medical treatment for maintaining his back brace and for pain and muscle relaxants.[4]

---

[4]The referee also refused to consider the actions of the insurance company investigators during the riding incident as serious and wilful misconduct of the employer

Thereafter the insurance carrier petitioned for reconsideration on every statutory basis except the discovery of new evidence. Nevertheless, without any explanation of its previous failure to produce the film, the carrier's petition offered for the first time to submit the motion picture. The appeals board granted the petition "for study, for such further proceedings as may then be indicated by the record, and for this Board's decision following reconsideration. It is noted that in its petition, defendant refers to motion picture film which was never offered in evidence. Since it appears to the board that the film should be in evidence, a notice of intention to admit the film in evidence is hereinafter issuing."

Rather than refer further proceedings to a hearing referee, as is its normal practice, the panel of the appeals board noticed its intention to view the film by itself.[5] The panel stated, "At the conclusion of the viewing of the film counsel will be given an opportunity to make brief comments on the content thereof." At the hearing investigator Chavez testified as to his observation of the applicant and, upon cross-examination, admitted that another investigator named George Slinker had worked on the case. Chavez denied that Slinker had represented himself as Robert Hendry, but admitted that there "might have been" alcoholic beverages consumed at the time.

The film was shown, and the insurance carrier commented on its content. Applicant's attorney asked permission to put applicant on the stand for further testimony in rebuttal but one of the panel members responded, "We are here strictly to view the films and hear your comments." The panel then permitted the applicant's attorney to ask three more questions of investigator Chavez concerning the riding incident. After the fourth question, the panel "objected" to all four questions on the ground that any answers to them would be "completely incompetent and irrelevant and immaterial on the matter of the issue before this Board." The answers to the three questions, however, were not stricken. Applicant's attorney did not proceed with further questions; the matter was submitted.

---

under Labor Code section 4553. (But see Lab. Code, § 3850, subd. (b); cf. *Duprey* v. *Shane* (1952) 39 Cal.2d 781, 790 [249 P.2d 8].) The appeals board later upheld the referee in this regard; the applicant did not raise the serious and wilful misconduct issue in his petition for writ of review or in his petition for hearing. We therefore decline to consider the issue in the present proceeding.

[5]Although the panel retains the authority to receive evidence on reconsideration, it almost always refers the matter to a referee for the taking of evidence. (Lab. Code, § 5906; 1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1970) § 7.03[5][b]; Bancroft, *Some Procedural Aspects of the California Workmen's Compensation Law* (1952) 40 Cal.L.Rev. 378, 392.) In receiving the evidence without a referee and without permitting full cross-examination and rebuttal testimony, the appeals board apparently failed to distinguish between its role as a reviewing body and as a trier of fact.

The appeals board issued its opinion after reconsideration, relying entirely upon the motion picture evidence: "We are satisfied that the activities depicted in said motion pictures are inconsistent with any permanent disability as a result of the within injury, and we will find, therefore, that this injury caused no permanent disability." The appeals board relied upon the reports of Dr. Perlson and Dr. Crandall to determine that temporary disability ceased on September 25, 1968 (the date of Dr. Crandall's report). It continued, "We are also satisfied that the injury herein has not caused the need for any further medical treatment as *implied* by Joseph Perlson, M.D., in his report of September 28, 1968." (Italics added.)

*2. The appeals board improperly considered the motion picture evidence and the medical reports based solely on the film.*

Labor Code section 5903 provides that any person aggrieved by the decision of a referee may petition the appeals board for reconsideration on the ground that he "has discovered new evidence material to him, which he could not, with reasonable diligence, have discovered and produced at the hearing."[6] █ This provision seeks to achieve the orderly and efficient conduct of workmen's compensation cases and requires that all parties present their evidence in a timely fashion at the referee's hearing. A party cannot withhold crucial evidence in the expectation that the referee will decide in its favor, and then, if the referee does not so rule, invoke a right to reconsideration.

█ A petition for reconsideration on the ground of new evidence should state the nature of the proffered evidence and "a full and accurate statement of the reasons why such testimony or exhibits could not reasonably have been discovered or produced before the filing of the decision." (W.C.A.B. rule 10856(e); see *Standard Rectifier Corp.* v. *Workmen's Comp. App. Bd.* (1966) 65 Cal.2d 287, 292 [54 Cal.Rptr. 100, 419 P.2d 164]; *Pacific*

---

[6]Labor Code section 5903 provides,

"At any time within 20 days after the service of any final order, decision, or award made and filed by the appeals board or a referee granting or denying compensation, or arising out of or incidental thereto, any person aggrieved thereby may petition for reconsideration upon one or more of the following grounds and no other:

(a) That by such order, decision, or award made and filed by the appeals board or referee, the appeals board acted without or in excess of its powers.

(b) That the order, decision, or award was procured by fraud.

(c) That the evidence does not justify the findings of fact.

(d) That the petitioner has discovered new evidence material to him, which he could not, with reasonable diligence, have discovered and produced at the hearing.

(e) That the findings of fact do not support the order, decision, or award.

Nothing contained in this section shall limit the grant of continuing jurisdiction contained in Sections 5803 to 5805 inclusive."

References hereinafter to section 5903, without mention of any code, are to the quoted section.

*Indem. Co.* v. *Ind. Acc. Com.* (1945) 26 Cal.2d 509, 518 [159 P.2d 625]; *Baker* v. *Industrial Acc. Com.* (1959) 24 Cal.Comp. Cases 17, 18.)

In the present case the insurance carrier must have known of the motion picture evidence at least from August 6, 1968, when, on the basis of the film, it ceased paying temporary disability compensation. The carrier enjoyed ample opportunity to present the film at the referee's hearing but failed to do so. Thus in its petition the carrier could not, and did not, urge as a basis for offering the film the ground of discovery of new evidence. The carrier merely recited in the statutory language the various other grounds for reconsideration—none of which related to the film—and stated no reason whatsoever for its failure to present the film at the referee's hearing.[7]

Since section 5903 declares that an aggrieved party may petition for reconsideration on the five statutory grounds "and no other" and since the petition failed to state a competent basis for belatedly offering the film into evidence on reconsideration, the appeals board violated section 5903, its own rule 10856(e), and reasonable canons of orderly procedure in granting the petition solely in order to present the film.

The appeals board in its return before this court now argues that it retains the inherent authority to grant reconsideration on its own motion under section 5906 of the Labor Code[8] and thus could consider the film whether or not it were offered by one of the parties. It maintains that in granting reconsideration it may disregard the restrictions of section 5903.

Although we note that the appeals board granted reconsideration on the basis of the carrier's petition, which would be controlled not by section

---

[7]After the petition for reconsideration had been granted, the carrier's attorney stated that he failed to produce the film at the referee's hearing bcause he did not have it in his possession at that time. If, because of excusable neglect, the attorney had not brought the film to the hearing, he could have requested a continuance in order to obtain it. (Compare 3 Witkin, Cal. Procedure (1st ed. 1954) Attack on Judgment in Trial Court, § 14.) The attorney for the carrier made no such request for a continuance and thus cannot rely upon the excuse that he did not have the film with him at the time of the hearing.

[8]Labor Code section 5906 provides,
"Upon the filing of a petition for reconsideration, or having granted reconsideration upon its own motion, the appeals board may, with or without further proceedings and with or without notice affirm, rescind, alter, or amend the order, decision, or award made and filed by the appeals board or referee on the basis of the evidence previously submitted in the case, or may grant reconsideration and direct the taking of additional evidence. Notice of the time and place of any hearing on reconsideration shall be given to the petitioner and adverse parties and to such other persons as the appeals board orders." (See also Lab. Code, §§ 5315, 5900, subd. (b).)
References hereinafter to section 5906, without mention of any code, are to the quoted section.

5906 but by section 5903, we pass on to the more fundamental analysis of the board's powers under section 5906. ■ We believe the language of the Court of Appeal in *Michon* v. *Workmen's Comp. App. Bd.* (1971) 15 Cal.App.3d 917, 924-925 [93 Cal.Rptr. 476] (fn. omitted; italics in original) applicable. "But the board *exceeded its power* when, without cause, it granted the employer-carrier's petition which, itself, set forth no sufficient cause. A *court* does not have power to overturn its judgment and grant new trials capriciously (See 3 Witkin, Cal. Procedure (1954) p. 2051, citing *Diamond* v. *Superior Court* (1922) 189 Cal. 732, 736 [210 P. 36], and other cases; *id.* 1967 Supp., p. 835, citing *Fomco, Inc.* v. *Joe Maggio, Inc.* (1961) 55 Cal.2d 162, 166 [10 Cal.Rptr. 462, 358 P.2d 918].) We hold arbitrary power is similarly denied the board. Labor Code section 5906 provides that the board may grant reconsideration upon its own motion. We interpret the Legislature in granting that power to have intended that, whether reconsideration is initiated by petition of a party aggrieved or upon the board's own motion, the order granting reconsideration must be based upon one of the grounds specified in section 5903. Otherwise, workmen's compensation hearings could be tried over and over again." (See Lab. Code, §§ 5315, 5900, subd. (b); Code Civ. Proc., § 657, subd. 4; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 633-635 and fn. 11 [83 Cal.Rptr. 208, 463 P.2d 432]; *Evans* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 753, 755 [68 Cal.Rptr. 825, 441 P.2d 633].)[9]

Although we do not believe that the board's grant of reconsideration here rested upon sufficient grounds, we recognize that section 5903 provides the appeals board with considerable discretion in deciding whether to grant such reconsideration. Indeed, the breadth of the board's powers in that respect finds further exemplification in Labor Code section 5903, subdivision (c), which permits the board to grant reconsideration if the evidence does not "justify" the findings of fact. The word "justify" indicates that the board enjoys broad authority to correct injustices, but at the same time by definition inhibits an arbitrary grant of reconsideration. (See, e.g., *Argonaut Ins. Exchange* v. *Ind. Acc. Com.* (1958) 49 Cal.2d 706, 710-

---

[9] "It is to be noted, however, that within limits prescribed in sections 5803-5806, the board does have continuing jurisdiction 'upon the grounds that the disability of the person in whose favor such award was made has either recurred, increased, diminished, or terminated.' (Lab. Code, § 5803.) Nothing herein stated shall be construed as an attempt by this court to circumscribe that power." (*Michon* v. *Workmen's Comp. App. Bd., supra,* 15 Cal.App.3d 917, 925.) Nor do we here circumscribe the board's authority to "confirm, adopt, modify or set aside the findings, order, decision, or award of a referee . . ." (Lab. Code, § 5315) to any greater extent than contemplated by *Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317-319 [90 Cal.Rptr. 355, 475 P.2d 451] (referee's findings are "entitled to great weight").

711 [321 P.2d 460][10] (reconsideration granted to consider whether evidence and findings justify attorney's lien and later award of compensation); *Rushing* v. *Workmen's Comp. App. Bd.* (1971) 15 Cal.App.3d 517, 522 [92 Cal.Rptr. 605] (reconsideration may be granted to direct examination by a physician (Lab. Code, § 5701) and taking of additional evidence).)

 Under the circumstances of the present case, however, the board abused its discretion in allowing the carrier deliberately to withhold the motion picture evidence until the referee, who is the official fact-finder of the board, had reached a decision. Neither the board nor the carrier has suggested any persuasive reason why the carrier should be permitted to flout the board's reasonable rules as well as its legislative mandate under section 5903. We conclude that the board in ordering reconsideration erroneously relied upon the motion picture evidence. Furthermore, in permitting the attorneys only to "make brief comments on the content" of the film the board denied applicant his fundamental right to cross-examination and to the presentation of rebuttal evidence. (See *Allied Comp. Ins. Co.* v. *Ind. Acc. Com.* (1961) 57 Cal.2d 115, 121 [17 Cal.Rptr. 817, 367 P.2d 409]; *Fireman's Fund Indem. Co.* v. *Ind. Acc. Com.* (1963) 223 Cal.App.2d 350, 351-353 [35 Cal.Rptr. 729]; *Massachusetts etc. Ins. Co.* v. *Ind. Acc. Com.* (1946) 74 Cal.App.2d 911, 913-915 [170 P.2d 36].)[11]

Even if the motion picture evidence had been offered in a timely fashion at the referee's hearing, the referee should have refused to rely upon it

[10]Although *Argonaut* distinguishes between the "good cause" requirement of Labor Code sections 5803-5806 and the lack of such a requirement in Labor Code sections 5315, 5900, and 5906, the granting of reconsideration in *Argonaut* rested upon a non-arbitrary basis and the *Argonaut* opinion does not dispense with the requirement for such a basis for granting reconsideration.

[11]Previous to the enactment of Labor Code section 5952, workmen's compensation decisions were reviewable by writ of certiorari, and appellate courts would not annul decisions on the ground that the Industrial Accident Commission had committed procedural errors. (*Maryland Cas. Co.* v. *Industrial Acc. Com.* (1918) 178 Cal. 491, 492-493 [173 P. 993]; *Folsom* v. *Industrial Acc. Com.* (1934) 3 Cal.App.2d 282, 284 [38 P.2d 786].) Workmen's Compensation Appeals Board decisions are now reviewable by writ of review under section 5952. Section 5952, subdivision (c), permits an appellate court to annul a workmen's compensation "order, decision, or award" if it is "unreasonable." "The term unreasonable [includes] unfair or arbitrary procedure." (Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1963) § 12.12.) We can only annul an appeals board decision, however, if it is reasonably probable that, absent the procedural error, the aggrieved party would have attained a more favorable result. (See *Allied Comp. Ins. Co.* v. *Ind. Acc. Com., supra,* 57 Cal.2d 115, 121; *Warner Constr. Corp.* v. *City of Los Angeles* (1970) 2 Cal.3d 285, 300 [85 Cal.Rptr. 444, 466 P.2d 996].) In the present case, the appeals board clearly considered the content of the film to be pivotal in deciding whether applicant was suffering from permanent disability. Hence, both the improper viewing of the film on reconsideration and the failure to permit cross-examination and rebuttal constitute grounds for annulling the board's decision.

because the carrier obtained it by fraudulent inducement. The record contains uncontradicted testimony by applicant that the private investigator induced applicant's intoxication and subsequent horseback ride in order to obtain a film of this activity. The carrier thereafter attempted to profit by this questionable conduct: it sought to introduce the film in evidence at the compensation proceeding.

We recognize that motion picture evidence is now quite commonly utilized in personal injury and workmen's compensation litigation. (See, e.g., *Ryan* v. *Workmen's Comp. App. Bd.* (1968) 265 Cal.App.2d 654, 660 [72 Cal.Rptr. 140]; *Mejia* v. *Workmen's Comp. App. Bd.* (1966) 31 Cal.Comp.Cases 330; *Transport Indem. Co.* v. *Workmen's Comp. App. Bd.* (1966) 31 Cal.Comp.Cases 356; 1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, supra, § 17.01[5][b]; Herlick, Cal. Workmen's Compensation Law (1970) § 16.66.) ██ Ordinarily, of course, motion pictures are obtained without fraudulent inducement.[12] Under such circumstances the film may constitute competent evidence to be considered in determining the extent of disability. On rare occasions, however, the insurance carrier or its private investigators have deceitfully induced applicants to perform acts for the hidden camera which they would not otherwise have committed. (See *Carson* v. *Workmen's Comp. App. Bd.* (1966) 31 Cal.Comp.Cases 291.)[13]

██ ██ In the present proceeding, the carrier should not profit from its own deceitful conduct. The investigators feigned friendship and concealed their employer's identity in bringing about applicant's inebriation and effectuating his horseback ride. Nothing in the record so much as suggests that in the absence of the fraudulent inducement applicant would have taken the ride. Indeed, the referee found that the carrier fraudulently obtained the film by means of a violation of applicant's rights; the referee refused to consider the two medical reports to the extent that they described or relied upon the tainted film.

---

[12]See, e.g., *Ryan* v. *Workmen's Comp. Bd.*, *supra*, 265 Cal.App.2d 654, 660 (applicant filmed in parking lot); *Choyce* v. *Workmen's Comp. App. Bd.* (1967) 32 Cal.Comp.Cases 315 (applicant filmed while playing basketball); *Kemp Bros. Contractors* v. *Workmen's Comp. App. Bd.* (1967) 32 Cal.Comp.Cases 35 (applicant filmed getting into and out of automobile); *Ryland* v. *Industrial Acc. Com.* (1966) 31 Cal.Comp.Cases 54 (applicant filmed walking 14½ blocks on public street without stopping).

[13]In such cases, the private investigators may well make an intrusion into the individual's right of privacy which would be objectionable or offensive to the reasonable man. (See Prosser, *Privacy* (1960) 48 Cal.L.Rev. 383, 390-391.) Courts have permitted such an individual to maintain an action for damages against the intruders. (See, e.g., Shernoff, *The Demise of the Sub Rosa Investigation*, 45 State Bar J. 853; see also *Wayne* v. *Bureau of Private Investigators & Adjusters* (1962) 201 Cal.App.2d 427, 433-436 [20 Cal.Rptr. 194].)

The appeals board is not "bound by the common law or statutory rules of evidence and procedure, but may make inquiry in the manner, through oral testimony and records, which is best calculated to ascertain the substantial rights of the parties and *carry out justly the spirit and provisions*" of the workmen's compensation laws. (Italics added.) (Lab. Code, § 5708.) As this court observed in *French* v. *Rishell* (1953) 40 Cal.2d 477, 481 [254 P.2d 26], the board "from its early days, has" been "allowed to receive hearsay evidence and to proceed informally. . . ." (See *Bland* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 324, 330 [90 Cal.Rptr. 431, 475 P.2d 663].) Evidence obtained by fraud and deceit in violation of the rights of the applicant, however, is not "best calculated to ascertain the substantial rights of the parties and carry out *justly* the *spirit* and provisions" of the workmen's compensation laws. The high purposes of the compensation law should not be perverted by resort to evidence perfidiously procured. We therefore conclude that the board may not rely upon evidence obtained, as in the present case, by deceitful inducement of an applicant to engage in activities which he would not otherwise have undertaken.

3. *The appeals board decision lacks the support of substantial evidence.*

As we have stated, the referee, after a complete and full hearing, determined that applicant had incurred a 57 percent permanent disability; this award was set aside by the appeals board solely upon the basis of the motion picture of the ride and the medical reports of Drs. Crandall and Perlson that were predicated upon that film. ▮ We shall point out that the board's decision lacks the support of substantial evidence on either of two hypotheses: that the board could rely upon the tainted motion picture and the resultant reports or that the board could not do so.

Assuming the prior supposition we cannot find in the film or the reports substantial evidence to support the board's conclusion that applicant incurred *no* permanent disability. Turning to the film, we note that it does not refute the referee's finding that applicant could perform light work only and not heavy work. First, not even the carrier's attorney contended that the film showed anything more than that "Applicant is not precluded to light work." The carrier's attorney admitted, "I don't think the activity was strenuous or severe, but it did show that the applicant is willing to move. The applicant could work; if he could be as active as the pictures depict. . . ." Applicant, however, did not deny that he could perform light work and testified as to the kinds of light work in which he had engaged since the accident. Second, Dr. Shear, one of applicant's doctors, wrote that applicant is "unable to resume employment of a strenuous nature including driving a truck which also necessitates loading and unloading of heavy merchandise and equipment. . . . This patient should not attempt

to lift weights in excess of 15 to 20 pounds. . . ." Nothing in the film contradicts Dr. Shear's report, which the referee accepted. Third, applicant engaged in riding while under the influence of alcoholic beverages, a condition that might well have temporarily reduced his back pain so to permit activity more arduous than usual. As the appeals board observed in refusing to rely upon motion picture evidence in another case, "It should be noted that motion picture films, such as the ones we viewed in this matter are often deceptive in that they depict a person on his good days, but fail to reveal his activities on those days when he might have trouble." (*Cypress Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 32 Cal.Comp.Cases 458, 460.)[14]

Clearly, the motion picture evidence does not constitute substantial evidence to support the appeals board's conclusion that applicant had incurred *no* permanent disability. It might have supported a conclusion that applicant was not disabled from performance of light work, but this conclusion would have been completely consistent with the referee's decision.

In like fashion, the two medical reports, which the board followed, constitute no more substantial evidence than the film on which they were founded. "Expert medical opinion . . . does not always constitute substantial evidence on which the board may rest its decision. Courts have held that the board may not rely on medical reports . . . based upon inadequate medical history or examinations (*West* v. *Industrial Acc. Com.* (1947) 79 Cal.App.2d 711. . . .)" or upon "surmise, speculation, conjecture, or guess." (*Place* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 372, 378 [90 Cal.Rptr. 424, 475 P.2d 656]; see *Garza* v. *Workmen's Comp. App. Bd.*, *supra*, 3 Cal.3d 312, 318-319.) The September 1968 medical reports disclose the enumerated badges of unreliability.[15]

In the instant case, the physicians knew nothing of the conditions under which applicant took the ride, the conditions that followed it, or whether the ensuing pain would preclude applicant from ever pursuing such

---

[14]Although the film purported to show the applicant on two successive days during which he was engaging in excessive drinking, the applicant felt severe back pain from the riding as soon as he stopped drinking. (See generally Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, supra, § 17.01 [5][b].)

[15]Accordingly, we need not decide whether Labor Code section 5703 would also preclude the appeals board from relying upon a doctor's report which was prepared when the doctor had not seen the patient for such a substantial period as seven or nine months and when the doctor clearly lacked significant information which would affect his opinion. (See *Sweeney* v. *Workmen's Comp. App. Bd.* (1968) 264 Cal.App. 2d 296, 305 [70 Cal.Rptr. 462]; *State Employees' Retirement System* v. *Smith* (1959) 24 Cal.Comp.Cases 90; *Waldon* v. *Industrial Acc. Com.* (1945) 10 Cal.Comp.Cases 148.)

activities again. In addition, the film did not indicate that the applicant could perform heavy work and thus had completely recovered from his industrial injury. The medical reports, therefore, do not constitute substantial evidence that applicant suffered no permanent disability.

Assuming that because of the reasons above stated, the board could not properly rely upon the film and the related medical reports, we find that the board clearly lacked substantial evidence to support its decision. The board based its conclusion that applicant had suffered no permanent disability solely upon the motion picture and the September 1968 medical reports. Since the board could not justifiably rely upon the film and related medical reports and since no substantial evidence remains to support the decision, we must conclude that the holding that applicant had incurred no permanent disability should be annulled. (Lab. Code, §§ 5952, subd. (c), 5952, subd. (d); *Maryland Cas. Co.* v. *Industrial Acc. Com., supra,* 178 Cal. 491, 493; see *LeVesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 627, 637.)

We conclude with the observation that we cannot sanction the carrier's attempt to profit by its deceitful inducement of applicant to engage in activity which he would not otherwise have undertaken. The legal process cannot be stultified by crowning such amoral maneuvers with apparent success. In the instant case the procedure becomes even more aggravated by the late reliance upon introduction of the ill-gotten film at a hearing on reconsideration although that film had not been previously produced and although on reconsideration applicant was denied the rights of cross-examination and presentation of rebuttal evidence. The procedure here is thus doubly dubious.

The order is annulled with directions to the Workmen's Compensation Appeals Board to reinstate the referee's award initially made, in accordance with the views expressed.

Wright, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.