[No. B016054. Second Dist., Div. Three. Apr. 7, 1986.]

ULDA C. HALL et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and
SOUTHERN CALIFORNIA RAPID TRANSIT DISTRICT, Respondents.

**COUNSEL**

Julian B. Fensten and Bruce Gelber for Petitioners.

Miller & Folse, John W. Miller, Richard W. Younkin, William B. Donohoe, Alvin R. Barrett and Charles E. Finster for Respondents.

**OPINION**

**DANIELSON, J.**—Petitioners Ulda C. Hall, Sonya Michelle Hall, and Katy Munguia, dependents of Warren D. Hall, deceased, seek a writ of mandate compelling the Workers' Compensation Appeals Board (Board) to vacate its August 5, 1985 order granting reconsideration and alternatively seek review and annulment of that order.

The principal issues presented are whether the Board complied with Labor Code section 5908.5[1] and whether it exceeded its authority under section

---

[1]Labor Code section 5908.5 provides: "Any decision of the appeals board granting or denying a petition for reconsideration or affirming, rescinding, altering, or amending the original findings, order, decision, or award following reconsideration shall be made by the appeals board and not by a workers' compensation judge and shall be in writing, signed by a majority of the appeals board members assigned thereto, and shall state the evidence relied upon and specify in detail the reasons for the decision. [¶] The requirements of this section shall in no way be construed so as to broaden the scope of judicial review as provided for in Article 2 (commencing with Section 5950) of this chapter."

All further section references are to the Labor Code except where otherwise specified.

5903[2] by granting reconsideration for the purpose of obtaining an independent medical evaluation. We conclude that the Board did not exceed its authority under section 5903 but that it failed to comply with section 5908.5.

## FACTS

Warren Hall was employed by Southern California Rapid Transit District (RTD) from 1967 until September 10, 1983. On September 10, 1983, he died as a result of a myocardial infarction and cardiogenic shock.

Decedent worked as a bus driver during most of his employment, and was a schedule checker commencing sometime in January 1983. When decedent was working as a bus driver in early 1983, he told Bobby Hall, his co-employee and neighbor, that he could not "'take it'" anymore. Decedent told Ulda Hall, his wife, that he felt "very tired and desperate." Decedent worried about his personal safety along the bus route. On one occasion someone climbed through a window and decedent had to order that person and one other to leave the bus. Decedent became upset when customers refused to pay the fare or complained that "the bus didn't work," and he worried that his supervisor would criticize him when he was late because he had insisted on payment.

Although decedent had chest pains upon awakening on September 10, 1983, he went to work that day. After work Bobby Hall took decedent to the hospital. Decedent died that evening. There was conflicting medical evidence as to the cause of decedent's death.

The workers' compensation judge (WCJ) found that decedent died "as a proximate result of injury arising out of and occurring in the course of employment [by RTD] from 1967 to September 10, 1983."

RTD petitioned for reconsideration, contending that there was no substantial evidence supporting the WCJ's finding, that applicants failed to

---

[2]Section 5903 provides: "At any time within 20 days after the service of any final order, decision, or award made and filed by the appeals board or a workers' compensation judge granting or denying compensation, or arising out of or incidental thereto, any person aggrieved thereby may petition for reconsideration upon one or more of the following grounds and no other: [¶] (a) That by the order, decision, or award made and filed by the appeals board or the workers' compensation judge, the appeals board acted without or in excess of its powers. [¶] (b) That the order, decision, or award was procured by fraud. [¶] (c) That the evidence does not justify the findings of fact. [¶] (d) That the petitioner has discovered new evidence material to him or her, which he or she could not, with reasonable diligence, have discovered and produced at the hearing. [¶] (e) That the findings of fact do not support the order, decision, or award. [¶] Nothing contained in this section shall limit the grant of continuing jurisdiction contained in Sections 5803 to 5805, inclusive."

meet their burden of proof, and that the case should be referred to an independent medical examiner (IME).

In his report on the petition for reconsideration, the WCJ recommended denial of the petition, stating that applicants met their burden of proof and that an independent medical evaluation was unnecessary.

The Board granted reconsideration and noted that the medical evidence established that decedent had a history of hypertension. Dr. Reuben Merliss reported that Mrs. Hall informed him that decedent took nitroglycerin in September 1979, had his first heart attack in 1980, and had a second heart attack in December 1982. He stated that medical records indicated decedent had high blood pressure since 1975 and was diagnosed as having arteriosclerotic heart disease and an anterior subendocardial infarction in March 1981. He noted that Dr. John Monroe, decedent's treating physician, reported decedent had heart failure in April 1982 and that decedent's medical records indicated decedent had smoked approximately one pack of cigarettes per day for thirty years although at times he smoked more heavily. The Board quoted from a February 28, 1984 report in which Dr. Merliss opined that the emotional stress caused by decedent's work as a bus driver aggravated his coronary arteriosclerosis and was a cause of his death. In that report Dr. Merliss stated that he based his opinion on the history given to him by Mrs. Hall, his own knowledge of bus driving, and other information.[3]

The Board noted that in a report dated December 6, 1984, Dr. Samuel Sills identified cigarette smoking as one of the risk factors that caused and aggravated decedent's cardiac disease.[4] In a portion of the December 6, 1984 report quoted by the Board Dr. Sills concluded that stress did not cause the heart disease but did produce symptoms of angina.

The Board also quoted from a supplemental report in which Dr. Sills opined that stress does not aggravate arteriosclerosis but can produce angina, which can cause death if the heart is already diseased. The Board

---

[3]Dr. Monroe testified that arteriosclerotic heart disease is caused by various factors, including genetic predisposition, diet, lifestyle, hypertension, cigarette smoking, and stress. He opined that cigarette smoking was the main cause of decedent's arteriosclerosis. Decedent mentioned to Dr. Monroe that there was stress "as part of his job." Dr. Monroe testified that he did not believe decedent's work as a bus driver "caused" his death. When asked whether decedent's work as a bus driver was a contributing factor to his death, Dr. Monroe's response was "Life contributes to death." He testified that he was not familiar with the type of stress bus drivers have.

[4]Dr. Sills also found that the following were risk factors: decedent's hypertension, his genetic background, his age, his gender, and his diet, which was high in cholesterol and saturated fats.

noted that Dr. Sills later reported that decedent's death was not caused by any occupational event but was due to the natural progression of his coronary disease.

In a supplemental report dated January 24, 1985, Dr. Merliss discussed Dr. Sills' various reports. In the supplemental report Dr. Merliss opined that decedent's hypertension and arteriosclerosis were aggravated by the stress of his work as a bus driver. Without mentioning that specific conclusion, the Board quoted the preceding paragraph in which Dr. Merliss stated he had examined many bus drivers for many years, explained why he believed bus driving in the metropolitan Los Angeles area is extremely stressful, and concluded that "hypertension and arteriosclerosis appears [*sic*], in contradistinction to the general current elsewhere, to be on the increase in bus drivers . . . ."

Drs. Merliss and Sills testified at the hearing held March 19, 1985. Dr. Merliss testified in effect that he based his opinion on the depositions of Dr. Monroe and "Billy [*sic*] Hall," the history given by Mrs. Hall, the medical records, and substantial experience examining RTD bus drivers within the previous five years. Dr. Merliss was aware that decedent was responsible for the safety of passengers, that some of the passengers were under the influence of alcohol or drugs, that violent passengers would become angry with the driver when, in response to a silent alarm, a voice would ask whether the alarm had been activated accidentally, that passengers often gave the driver inadequate change or an invalid transfer, and that bus drivers were subject to verbal and physical abuse. The Board noted that Dr. Merliss testified that the stress produced by decedent's work as a bus driver caused his death by accelerating the hypertension and arteriosclerosis. The Board noted that Dr. Sills testified both that decedent's death was due to a heart attack that was "secondary to arteriosclerotic heart disease" and that arteriosclerosis is not caused by stress.[5]

The Board concluded: "This record indicates an obvious conflict in the medical evidence. Therefore, before a final decision after reconsideration is issued, the record must be supplemented in an attempt to resolve the conflict. This will necessarily involve referring the medical record to an IME. Reconsideration shall be granted and [*sic*] for this purpose and for such further proceedings as are considered necessary and proper."

---

[5]Dr. Sills concluded that decedent's hypertension led to his death, but opined that the hypertension was not industrially caused. Dr. Sills testified that "[s]tress cannot accelerate the progression of heart disease," but admitted that "[i]t has not been definitely ruled out as a factor." Noting that "[e]motional stress can produce temporary rises in blood pressure," he opined that "[t]he hypertension that decedent experienced was probably due to diet, arteriosclerosis and possibly other factors" and that "[s]tress was probably not a factor in [decedent's] hypertension."

After this court summarily denied the petition for mandate or review, the Supreme Court retransferred the matter to this court with directions "to issue a writ of review to be heard by that court when the proceeding is ordered on calendar."

## CONTENTIONS

Applicants contend that the Board exceeded its authority in granting reconsideration because reconsideration was granted for a reason other than those enumerated in section 5903. They further contend that the Board did not comply with section 5908.5. Respondents contend that the Board properly granted reconsideration and complied with section 5908.5. Respondents also contend that the petition was premature insofar as it sought issuance of a writ of review because the order granting reconsideration is not a final order.

## DISCUSSION

■ Since the Supreme Court granted review and retransferred the matter to this court with directions to issue a writ of review, we are bound by the Supreme Court's decision that a writ of review is appropriate in this matter. (See *El Patio* v. *Permanent Rent Control Bd.* (1980) 110 Cal.App.3d 915, 922-923 [168 Cal.Rptr. 276]; but see *Gumilla* v. *Industrial Acc. Com.* (1921) 187 Cal. 638, 639-640 [203 P. 397]; *Holabird* v. *Railroad Commission* (1916) 171 Cal. 691, 694-697 [154 P. 831]; *Hughes* v. *Willig Freight Lines* (1981) 46 Cal.Comp.Cases 685, 687-688; *State of California* v. *Workers' Comp. Appeals Bd.* (*Dineen*) (1976) 41 Cal.Comp.Cases 5; but cf. *Safeway Stores, Inc.* v. *Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 528, 534-535 [163 Cal.Rptr. 750].) Respondent Board's reliance upon various cases such as *Krueger* v. *Superior Court* (1979) 89 Cal.App.3d 934 [152 Cal.Rptr. 870], in which the Supreme Court ordered the issuance of an alternative writ, is misplaced because here the issuance of the writ of review is already an accomplished fact. (Code Civ. Proc., § 1071.)

■ An order granting reconsideration must be based on one or more of the grounds enumerated in section 5903. (*Redner* v. *Workmen's Comp. Appeals Bd.* (1971) 5 Cal.3d 83, 91-92 [95 Cal.Rptr. 447, 485 P.2d 799].) By reason of section 5903 the Board possesses considerable discretion to grant reconsideration, especially under subdivision (c), which permits the Board to grant reconsideration when the evidence does not justify the findings. (*Redner, supra,* 5 Cal.3d at p. 92.) The ground that the evidence does not justify the findings will often support a decision to grant reconsideration to direct an independent medical evaluation (§ 5701; see § 5906). (See *Redner,*

*supra,* at pp. 92-93.) "The word 'justify' indicates that the board enjoys broad authority to correct injustices, but at the same time by definition inhibits an arbitrary grant of reconsideration. [Citations.]" (*Ibid.*) Contrary to petitioners' contention, the fact that aspects of each physician's opinion support the WCJ's finding of industrial causation does not render arbitrary the Board's decision to grant reconsideration.[6] When the medical evidence is in conflict and the Board is in doubt as to the cause of the employee's injury or death, the Board has power under section 5903, subdivision (c) to grant reconsideration to direct an independent medical evaluation (see *Redner, supra,* at pp. 92-93; *Zozaya* v. *Workmen's Comp. Appeals Bd.* (1972) 27 Cal.App.3d 464, 468 [103 Cal.Rptr. 793]; *Solomon* v. *Workmen's Comp. Appeals Bd.* (1972) 24 Cal.App.3d 282, 285-286 [100 Cal.Rptr. 899]) and should grant reconsideration for this purpose (see *Lundberg* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 436, 440 [71 Cal.Rptr. 684, 445 P.2d 300]). █ It is essential, however, that the Board specify in detail the reasons for its decision to grant reconsideration. (§ 5908.5; *Evans* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 753, 755 [68 Cal.Rptr. 825, 441 P.2d 633]; *Zozaya, supra,* 27 Cal.App.3d at p. 471; *Solomon, supra,* 24 Cal.App.3d at p. 287; see *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 635, fn. 11 [83 Cal.Rptr. 208, 463 P.2d 432].)

█ Compliance with the requirement of section 5908.5 that the Board provide a detailed specification of reasons for its decision is necessary "1) to apprise the parties and the [WCJ] of the basis for reconsideration, so that the parties will understand what new evidence or arguments they should present to the board (*LeVesque* v. *Workmen's Comp. App. Bd., supra,* p. 635, fn. 11) and 2), to 'assist the reviewing court to ascertain the principles relied upon by the lower tribunal, to help that tribunal avoid careless or arbitrary action, and to make the right of . . . seeking review more meaningful' (*Evans* v. *Workmen's Comp. App. Bd., supra,* p. 755)." (*Solomon* v. *Workmen's Comp. Appeals Bd., supra,* 24 Cal.App.3d at p. 287.) █ In the order granting reconsideration in *Solomon* the Board stated: "'We are not completely satisfied with the medical evidence in the record at present as it pertains to the issues raised in the petition. In our opinion, an independent medical evaluation would be of assistance to us in resolving these issues. Reconsideration will be granted for the purpose of obtaining such an evaluation; for such further proceedings as may thereafter be indi-

---

[6]With respect to petitioners' contention that a relationship between a stressful occupation and acceleration of arteriosclerosis is virtually a matter of judicial knowledge (see *Lewis* v. *Workers' Comp. Appeals Bd.* (1976) 56 Cal.App.3d 938, 952 [128 Cal.Rptr. 752]), we note that our Supreme Court has recognized that there is a division of medical theory on this issue. (*City and County of San Francisco* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 103, 108-110 [148 Cal.Rptr. 626, 583 P.2d 151].) Although the Legislature has created a rebuttable presumption of industrial causation of heart trouble for certain classes of employees (e.g., § 3212.5), there is no such statutory presumption applicable to bus drivers.

cated in the record; and for this Board's decision following reconsideration.'"" (*Ibid.*) In *Zozaya* v. *Workmen's Comp. Appeals Bd.*, *supra*, 27 Cal.App.3d 464, the Board stated: "'The Board, after reviewing the record, is of the opinion that reconsideration should be granted for further evaluation of the nature and extent of the disability sustained by applicant as a result of the injury herein . . . .'"" (*Id.*, at p. 471.) In each case it was held that the Board failed to comply with section 5908.5. (*Zozaya*, *supra*, 27 Cal.App.3d at p. 471; *Solomon*, *supra*, 24 Cal.App.3d at p. 287.)

In the order granting reconsideration in *Sabedra* v. *Workmen's Comp. Appeals Bd.* (1974) 42 Cal.App.3d 428 [116 Cal.Rptr. 881], the Board stated that there was conflicting medical evidence as to the extent of the applicant's disability and pointed out that a physician and a chiropractor concluded that the applicant was limited to sedentary work while a second physician opined that the applicant was only precluded from heavy lifting and excessive lifting, bending, and stooping. (*Id.*, at pp. 430-431.) The Board then concluded: "'From its review, the Board is of the opinion that the medical evidence currently in the file does not provide an entirely satisfactory basis for a just and equitable decision on the issue of the nature and extent of applicant's disability. Under the circumstances, the Board considers this an appropriate case in which to exercise its discretion to direct an independent medical evaluation.'"" (*Id.*, at p. 431.) The *Sabedra* court considered the Board's specification of reasons to be indistinguishable from those held inadequate in *Solomon* v. *Workmen's Comp. Appeals Bd.*, *supra*, 24 Cal.App.3d 282 and *Zozaya* v. *Workmen's Comp. Appeals Bd.*, *supra*, 27 Cal.App.3d 464 (*Sabedra*, *supra*, 42 Cal.App.3d at p. 431), but held that, because the Board had in an earlier paragraph adequately detailed the narrow area in which there was a conflict in the medical evidence, the order complied with section 5908.5. (*Sabedra*, *supra*, 42 Cal.App.3d at pp. 431-432.) The court concluded that specification of a more detailed reason for the Board's refusal to accept the WCJ's view of the medical evidence would "require expression of a preference between existing conflicting medical reports[, which] would defeat the very purpose of seeking additional evidence." (*Id.*, at pp. 431-432.)

The statement in the present case that there is a conflict in the evidence suffers from the same deficiency that was present in *Zozaya* and *Solomon*. A simple statement that the medical evidence is conflicting offers no greater information than a statement in a case involving conflicting evidence that the Board is not satisfied with the evidence and desires an independent medical evaluation. The summary of the medical evidence does not cure the defect. Neither the parties nor the WCJ are apprised of the basis for reconsideration as no issues were "clearly pinpointed." (*Sabedra* v. *Workmen's Comp. Appeals Bd.*, *supra*, 42 Cal.App.3d at p. 431.) In contrast to the

situation in *Sabedra,* here it is difficult to discern whether the Board was interested solely in additional medical evidence as to whether work stress caused or contributed to decedent's arteriosclerosis, whether the Board also was interested in further medical evidence regarding decedent's hypertension or angina, or whether the Board's principal concern was Dr. Merliss' reliance on knowledge drawn from his personal experience in examining bus drivers. Because the Board has failed to comply with section 5908.5, the matter must be remanded.

## DISPOSITION

The opinion and order granting reconsideration filed August 5, 1985, is annulled. The matter is remanded to respondent Workers' Compensation Appeals Board with directions to reconsider its decision after having taken the necessary procedures to comply with this opinion in regard to the application of section 5908.5 of the Labor Code.

Lui, Acting P. J., and Arabian, J., concurred.

Petitioners' application for review by the Supreme Court was denied June 26, 1986.