[Civ. No. 27829. Fourth Dist., Div. Two. Mar. 14, 1983.]

JESUS CERVANTES, Plaintiff and Appellant, v.
GREAT AMERICAN INSURANCE COMPANY,
Defendant and Respondent.

**COUNSEL**

Miller, Winking, Madden & Theios, Olen G. Miller and Lawrence J. Winking for Plaintiff and Appellant.

Bruyneel & Waxman, Laura G. Bruyneel, Rose, Klein & Marias and Alan J. Stein as Amici Curiae on behalf of Plaintiff and Appellant.

Bruggeman & Smith, Bruggeman, Smith & Peckham, Steven K. Beckett and Randall Johnson for Defendant and Respondent.

Kegel, Tobin & Hamrick and Charles Schoemaker, Jr., as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**McDANIEL, J.**—The question presented by this appeal is whether appellant's complaint against the Great American Insurance Company (Great American), the workers' compensation carrier for his employer, based upon an alleged wilful delay in payment of benefits, states facts sufficient to remove the cause from the exclusive jurisdiction of the Workers' Compensation Appeals Board. We hold that it does not.

In May 1980, plaintiff, Jesus Cervantes, sustained an injury to his back in the course of his employment by Great American's insured. Although the injury required medical care, including surgery, Great American refused to pay or extend Cervantes any benefits. Otherwise, Great American neither requested to

have Cervantes examined by a physician of its choice nor contacted Cervantes' treating physician.

As a result, within 30 days or so of his injury, Cervantes filed an application to adjust his claim with Workers' Compensation Appeals Board (Board). After a hearing in July 1981, the Board issued its findings in September. The Board found that Cervantes' injury was work-related, and awarded medical costs and temporary and permanent disability benefits. Shortly after the award, Great American attempted to settle with Cervantes for less than the amount awarded in exchange for its agreement not to appeal the Board's decision. When Cervantes refused to settle, Great American then paid the award in full.

Cervantes, aggrieved by this handling of his claim, commenced this civil action in superior court against Great American, alleging that the latter had: (1) breached a duty of good faith owed to him; (2) violated certain provisions of Insurance Code section 790.03;[1] and (3) intentionally caused him to suffer severe emotional distress. In the key charging allegations, the complaint alleged Great American "refused at all times before trial to pay temporary disability, medical bills, or permanent disability to the plaintiff" and failed to have plaintiff "examined by a doctor," all of which Great American allegedly knew "was creating financial hardship and emotional upset to the plaintiff." The complaint further alleged that Great American's "threat of appeal was a sham." All of the above activities were alleged to have been done by Great American "intentionally and in bad faith," and with "wanton" and "reckless" disregard of the consequences to plaintiff.

---

[1]Cervantes contends that Great American violated Insurance Code section 790.03, subdivisions (h) (3), (5), (6), (10) and (13), which prohibit:

"(h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: . . .

"(3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies. . . .

"(5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

"(6) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered. . . .

"(10) Making known to insureds or claimants a practice of the insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration. . . .

"(13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement."

Third party claimants may sue insurance companies for bad faith under this section (*Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880, 884 [153 Cal.Rptr. 842, 592 P.2d 329]), but not "until the action between the injured party and the insured is concluded." (*Id.* at p. 884.) Great American contends, because the Board has continuing jurisdiction in this case, that the suit by Cervantes as a third party beneficiary is premature. Because of our holding that the Board has exclusive jurisdiction of this matter, we need not address the issue.

 The trial court sustained Great American's demurrer[2] on the ground that the action was barred because of the exclusive remedies prescribed for employees under the California Workers' Compensation Act. This appeal followed.

The California Workers' Compensation Act provides an elaborate scheme for adjudication of claims by employees against employers for injuries "arising out of and in the course of" their employment. (Lab. Code, § 3600.) Although the employee's right to compensation under section 3600 is generally his exclusive remedy (Lab. Code, § 3601), he may sue "any person other than the employer" for damages proximately resulting from such an injury (Lab. Code, § 3852). *Labor Code section 3850 protects workers' compensation insurance carriers from third party liability by defining the term "employer" to include insurers.*

When an insurer refuses to pay compensation benefits the employee may seek a remedy under Labor Code section 5814, which provides: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein."

██ In *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616 [102 Cal.Rptr. 815, 498 P.2d 1063], the California Supreme Court recognized an exception to the protection afforded insurance carriers against third party actions. In *Unruh,* an insurance investigator placed the injured employee under surveillance and then caused her to become romantically involved with him. He then took her to Disneyland where he enticed her to cross a rope bridge and a barrel bridge. As she crossed, he shook the bridge violently and a colleague of his filmed the scene. When the defendant insurance company revealed the relationship and showed the film at the Board hearing the employee suffered an emotional breakdown. She then sued the insurer for negligent and intentional infliction of emotional distress. The *Unruh* court's analysis relied on the "dual capacity" doctrine enunciated in an earlier decision, *Duprey* v. *Shane* (1952) 39 Cal.2d 781 [249 P.2d 8].

---

[2] On appeal, we deem Great American's demurrer to have admitted all well-pleaded material facts. (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].) However, we do not deem as admitted Cervantes' allegations that Great American acted "maliciously" and "with wanton and reckless and conscious disregard of the consequences to plaintiff." While admitting all well-pleaded facts, a demurrer does not admit contentions, deductions or conclusions of fact or law. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241].)

In *Duprey*, the court held that a nurse could sue her physician-employer for malpractice on the ground that the doctor had stepped outside of his role as employer when he rendered medical aid. By analogy, the court in *Unruh* held that the investigator's conduct was so unique and outrageous as to fall well outside the normal scope of the customary insurance investigation, and therefore that the insurer could be sued at law for intentional infliction of emotional distress. "[W]e are unable to conclude that a compensation insurer remains within its proper role as such, when, as in the instant case, through its agents or others employed by it, such insurer intentionally embarks upon a deceitful course of conduct . . . which causes injury to the subject of the investigation. . . . Our condemnation in *Redner* [*Redner* v. *Workmen's Comp. Appeals Bd.* (1971) 5 Cal.3d 83 (95 Cal.Rptr. 447, 485 P.2d 799)] leaves no doubt that such conduct goes beyond the normal role of an insurer in a compensation scheme intended to protect the worker. [Citation.]" (*Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d 616, 630.)[3]

In *Unruh,* what the carrier did constituted affirmative acts actually designed to influence if not distort the outcome of the Board hearing. Such conduct could not possibly be characterized as coming within the ambit of section 5814.

Here, plaintiff argues that the actions of Great American constituted precisely the sort of intentional torts recognized by *Unruh*. Such contention is specious. *Unruh* clearly created an exception only for behavior which was so extreme and outrageous that it fell well outside the scope of behavior that could reasonably be expected of insurers. Moreover, it was directed at influencing the outcome of the hearing and was not essentially a delay or refusal to pay benefits. Our conclusion is reinforced by six recent appellate decisions which have considered and rejected similar claims.

In *Everfield* v. *State Comp. Ins. Fund* (1981) 115 Cal.App.3d 15 [171 Cal.Rptr. 164], the applicant, having received an award from the Workers' Compensation Appeals Board, sued the carrier alleging consistent delay and arbitrary reduction in the payment of compensation benefits, plus disobedience of a subpoena duces tecum, which conduct was said to constitute bad faith and intentional infliction of emotional distress. The trial court sustained defendant's demurrer. The appellate court affirmed, stating: "These three acts in themselves are not fraudulent, deceitful, outrageous, perfidious or so extreme or abnormal as to fit in the class of misconduct considered in *Unruh*." (*Id.* at

---

[3]The *Unruh* court also held that mere negligent performance by the carrier's agent did not constitute actions beyond the carrier's normal sphere of activity. "We can find no justification either in statutory or policy considerations for treating the negligent carrier as no longer acting as a carrier but as a third party." (*Unruh* v. *Truck Insurance Exhange, supra,* 7 Cal.3d 616, 628.) The court's reasoning in *Unruh* has been criticized. Larson, *Nonphysical Torts and Workmen's Compensation* (1975) 12 Cal. Western L.Rev., 1, confesses some puzzlement over why "an insurer ceases to be an insurer when it does its job tortiously."

p. 19.) The court noted that merely labeling as intentional or outrageous an unreasonable delay in payment, was not in and of itself sufficient to state a cause of action; to hold otherwise would be to defeat the whole purpose of the workers' compensation system. "If every case in which there is a delay, a change of amount, or a disobedience to a subpoena could be brought into a court of law by an unhappy worker by merely alleging that the acts were intentional, deceptive, outrageous and fraudulent without alleging the specific conduct and how it was carried out, it would make shambles of the workers' compensation system now quickly and efficiently handled for the benefit of the insured workers by the Workers' Compensation Appeals Board. [¶] The reasons for the delay, whether intentional or negligent, whether excusable or not, can be well inquired into by the board and where necessary discipline imposed." (*Everfield* v. *State Comp. Ins. Fund, supra,* 115 Cal.App.3d 15, 19.)

In *Fremont Indemnity Co.* v. *Superior Court* (1982) 133 Cal.App.3d 879 [184 Cal.Rptr. 184], plaintiff's complaint, as here, consisted of three causes of action: breach of duty of fair dealing, breach of statutory duties under Insurance Code section 790.03, and intentional infliction of emotional distress. The plaintiff alleged consistent delay and arbitrary reduction of benefit payments. Relying on *Everfield,* the court held that plaintiff had failed to allege facts which would remove the case from the exclusive jurisdiction of the Workers' Compensation Appeals Board, and granted a petition for writ of mandate ordering the trial court to sustain defendant's demurrer. The court stated: "There is no material difference between the complaint at bench and that discussed and presented in *Everfield.* At bench, plaintiff asserts that there is a difference in that the plaintiff here has suffered added physical and emotional distress arising not in the course of employment but outside of the course of employment; and all caused by the alleged wrongful acts of defendant insurance company in denying and withholding or otherwise failing to properly pay him his worker's compensation. That is not a distinction which removes the exclusive authority and jurisdiction of the WCAB. That is precisely the same situation and argument presented in *Everfield.* What was stated in *Everfield* applies here. [¶] Again, we stress that there are no allegations of separate acts alleged sufficient to remove defendant's insurance carrier from its capacity as an insurance carrier for the purposes of invoking the tort liability incurred by reason of conduct in a different capacity as explained and was the case in *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616." (*Fremont Indemnity Co.* v. *Superior Court, supra,* 133 Cal.App.3d 879, 881-882.)

Similarly, in *Ricard* v. *Pacific Indemnity Co.* (1982) 132 Cal.App.3d 886 [183 Cal.Rptr. 502], the reviewing court affirmed the dismissal of plaintiff's complaint which alleged that defendant's refusal to pay compensation benefits constituted a breach of good faith and intentional infliction of emotional dis-

tress. The court noted that the case was "arguably distinguishable from *Everfield,* in that Ricard has described the conduct of which he complains in somewhat greater detail, and has included allegations which, he contends, focus upon the impropriety of the manner in which Pacific handled his claim, rather than upon its failure to make payment." (*Id.* at p. 893.) Nevertheless, the court ruled that the case was practically indistinguishable from *Everfield*: "The carrier's conduct becomes additionally improper only through Ricard's allegations as to the state of mind which accompanied it, and even on that basis it does not reach the level of reprehensibility condemned in Unruh." (*Ricard* v. *Pacific Indemnity Co., supra,* 132 Cal.App.3d 886, 893.)

In *Depew* v. *Hartford Acc. & Indem. Co.* (1982) 135 Cal.App.3d 574 [185 Cal.Rptr. 472], plaintiff alleged that defendant's delay and then refusal to pay an award constituted a breach of its duty of good faith and fair dealing under Insurance Code section 790.03. The court affirmed the trial court's dismissal, ruling, despite plaintiff's allegations that the delay was "outrageous" and "far beyond the bounds of normal investigation and defense," that "[t]he conduct complained of here—namely, the failure to pay benefits, falls far short of the type of 'outrageous and extreme' conduct contemplated by Unruh. [Fn. omitted.]" (*Id.* at p. 577.) " '[Plaintiff] simply cannot allege a cause of action based upon the delay and the change in the amount of payment. [Citation.] [Fn. omitted.]' " (*Id.* at pp. 578-579; quoting *Everfield* v. *State Comp. Ins. Fund, supra,* 115 Cal.App.3d 15, 21.)

In the recent case of *Droz* v. *Pacific National Insurance Co.* (1982) 138 Cal.App.3d 181 [188 Cal.Rptr. 10], plaintiff sued his employer's workers' compensation carrier for refusing to pay benefits awarded by the Board. The complaint contained the same three counts as plaintiff's herein, as well as negligent infliction of emotional distress. Relying on the four cases discussed above, the court affirmed a judgment of dismissal stating: "Failure to pay benefits is a class of wrongs clearly within the contemplation of the workers' compensation system as the Legislature provided a specific penalty and remedy for such conduct in section 5814. . . . [¶] We, therefore, conclude that the complaint fails to state a cause of action." (*Id.* at p. 187.)

Finally, in *Denning* v. *Esis Corporation* (1983) 139 Cal.App.3d 946, 948 [189 Cal.Rptr. 118], the court confirmed the holdings of the several cases just cited and summarized. The appeal proceeded after a demurrer to a complaint which contained essentially the same allegations as the complaint here under scrutiny. In affirming the trial court's sustaining of the employee's demurrer without leave to amend, the *Denning* court said, "It is unnecessary to belabor the matter. Based on the decisions of this court in *Fremont Indemnity Co.* v. *Superior Court* (1982) 133 Cal.App.3d 879 [184 Cal.Rptr. 184]

and *Everfield* v. *State Comp. Ins. Fund* (1981) 115 Cal.App.3d 15 [171 Cal.Rptr. 164], we are persuaded the trial court's ruling was correct."

■ Prior case law notwithstanding, plaintiff further argues that Labor Code section 5814, providing for a 10 percent penalty for unreasonable delay of payment, was not intended to provide the exclusive remedy for intentional torts of the kind he attributes here to Great American. Because section 5814 has been held applicable to delays attributable to mere negligence or inadvertence, he argues that it cannot logically be deemed to be the exclusive remedy for delays of a wilful and intentional nature. The argument is meritless. The reports of the California Compensation Cases, not to mention the California appellate reports, are filled with decisions applying section 5814 to insurers who wilfully and deliberately refused to make timely payments. (See, e.g. *Berry* v. *Workmen's Comp. App. Bd.* (1969) 276 Cal.App.2d 381 [81 Cal.Rptr. 65]; *Ramirez* v. *Workmen's Comp. App. Bd.* (1970) 10 Cal.App.3d 227 [88 Cal.Rptr. 865]; *Guarantee Ins. Co.* v. *Industrial Accident Com. of the State of California* (1956) 21 Cal. Comp. Cases 279.) Indeed, it is precisely to deter insurers' wilful procrastinations that the Labor Code contains section 5814. In holding, in *Davison* v. *Industrial Acc. Com.* (1966) 241 Cal.App.2d 15 [50 Cal.Rptr. 76], that section 5814 could be applied to successive infractions, the court stated: "In our view section 5814 is both remedial and penal. The remedial aspect is to encourage the return of injured workers to their employment as quickly as possible. The penal aspect is to compel the employer to comply with the law fully and promptly. . . . The penalty is designed to secure timely payment of compensation, and if timely payment is not forthcoming after a first penalty a further penalty may run in order to *cure the mischief*. Were the threat of penalty limited to a single instance of delinquency, an employer or insurer who had unreasonably delayed payment of compensation and been assessed a 10 percent penalty could thereafter procrastinate indefinitely, subject only to the accrual of interest at the statutory rate. . . . We give the penalty section its intended deterrent effect and carry out the statute's basic policy of liberal construction by holding that successive delays in the payment of compensation may give rise to the imposition of successive penalties." (*Davison* v. *Industrial Acc. Com., supra,* 241 Cal.App.2d 15, 18, italics added.)

■ Great American's alleged failure to undertake reasonable investigation procedures by having its own physician examine Cervantes or contacting Cervantes' doctor, does not remove the matter from the exclusive jurisdiction of the Board, and the remedy of section 5814. Quite the contrary. In *Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223 [93 Cal.Rptr. 192, 481 P.2d 200], the California Supreme Court held that the burden of establishing "genuine doubt" as to the validity of an injury rests on the employer or insurer; absent such a positive showing, the employer or insurer is subject to the 10 per-

cent penalty of section 5814. (See also *Berry* v. *Workmen's Comp. App. Bd.*, *supra,* 276 Cal.App.2d 381, 384.)

Otherwise, as the courts in *Depew* and *Everfield* clearly held, the exclusivity of the workers' compensation system takes precedence over the provisions of Insurance Code section 790.03 which prescribes reasonable investigation standards, and does not provide the predicate for an exception for civil actions based upon breach of good faith. (*Everfield* v. *State Comp. Ins. Fund, supra,* 115 Cal.App.3d 15, 19-21; *Depew* v. *Hartford Acc. & Indem. Co., supra,* 135 Cal.App.3d 574, 578-579.)

 Cervantes also contends that Great American's threat to appeal the Board's decision was a sham, as evidenced by its failure to appeal when Cervantes refused to settle. This gambit, he contends, was done with "wanton" and "reckless" disregard of the consequences to himself, and, in fact, caused him severe emotional distress and aggravated his work-related injuries.

Great American, in response, argues that it was doing no more than it was lawfully entitled to do under Labor Code sections 5000, 5810 and 5950. We conclude, however, that whether or not Great American's effort to settle was sincere, and whether or not it resulted in psychiatric and physical injury to Cervantes, are issues within the exclusive jurisdiction of the Board. Following the rule enunciated in *Unruh* and its progeny, we are not persuaded that Great American's behavior was of such an "extreme and outrageous" nature as to lie beyond the bounds of normal insurer behavior and thus transform the insurer into a third party subject to civil suit. Indeed, the very fact that Insurance Code section 790.03, subdivision (h)(10) contemplates and prohibits precisely this sort of abuse, underscores this conclusion. No matter how reprehensible we may find this sort of behavior, it does not remove the cause from the Board's jurisdiction.

As compared to *Denning,* we have perhaps belabored the matter, because counsel for both plaintiff and an amicus curiae at oral argument relied heavily on a policy position. They urged that we should decide this case on the basis of what would better serve the goals and purposes of the Workers' Compensation Act. More particularly, they argued that affording this kind of civil remedy to applicants is necessary to deter insurance carriers from dragging their feet because the prospect of paying a 10 percent penalty does not now operate as a deterrent where the carriers can invest their reserves at a higher rate in the money markets during any period of delay.

The answer to this contention is two-fold. First, we would have been inclined to entertain such an argument more favorably had counsel provided us with a workable distinction between section 5814 cases and those where they contend

regular civil remedies should apply. With that the state of the debate, we can only refer them to the Legislature.

Second, the general problem of abuse by insurance carriers was both recognized and answered by Justices Tobriner and Grodin (both of whom were then sitting on the Court of Appeal).

As Justice Grodin, in *Ricard* v. *Pacific Indemnity Co., supra,* 132 Cal.App. 3d 886 stated: "We recognize, of course, a distinction between negligent and intentional misconduct, and we are not so naive as to believe that insurance carriers do not on occasion frustrate the objectives of the workers' compensation statute by intentionally dragging their feet. It may be that something more than the 10 percent penalty provided by the statute is required in order to deter such conduct." (*Id.* at p. 894.) Nevertheless, Justice Grodin, relying on the reasoning of Justice Tobriner in *Noe* v. *Travelers Ins. Co.* [1959] 172 Cal.App.2d 731 [342 P.2d 976], concluded that the workers' compensation system, if it was to continue to be comprehensive, viable and efficient, could never admit such suits: "'[W]e must point out that if delay in medical service attributable to a carrier could give rise to independent third party court actions, the system of workmen's compensation could be subjected to a process of partial disintegration. . . . The uniform and exclusive application of the law would become honeycombed with independent and conflicting rulings of the courts. The objective of the Legislature and the whole pattern of workmen's compensation could thereby be partially nullified.'" (*Ricard* v. *Pacific Indemnity Co., supra,* 132 Cal.App.3d 886, 894, quoting *Noe* v. *Travelers Ins. Co., supra,* 172 Cal.App.2d 731, 737.)[4]

Otherwise, plaintiff relies heavily on two recent cases, *Renteria* v. *County of Orange* (1978) 82 Cal.App.3d 833 [147 Cal.Rptr. 447] and *Bell* v. *Industrial*

---

[4]A further answer to the point here raised by plaintiff is that he is not necessarily limited to the 10 percent remedy of section 5814. To the extent that Great American aggravated a work-related injury by the manner in which it handled his claim, he may have a compensable claim for psychiatric injury which he can bring before the Board. (See *Droz* v. *Pacific National Insurance Co., supra,* 138 Cal.App.3d 181, 187, fn. 6; *Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d 616, 632, fn. 13.) We note, additionally, that Labor Code section 4553 provides that an award may be increased by 50 percent where the employee is injured "by reason of serious and willful misconduct." It is true that section 4553, which expressly defines those subject to the 50 percent penalty, does not mention insurers. However, no case has come to our attention which holds that section 4553 may not apply to insurers. In *Redner* v. *Workmen's Comp. Appeals Bd., supra,* 5 Cal.3d 83, 88, footnote 4, the court expressly declined to reach this issue.

Moreover, in recent decisions upholding civil actions against employers for intentional torts, the courts have shown an inclination to treat section 4553 as a remedy for employers' misbehavior falling somewhere between mere negligence, and intentional torts of an extreme nature. (See *Magliulo* v. *Superior Court* (1975) 47 Cal.App.3d 760, 778-779 [121 Cal.Rptr. 621]; *Renteria* v. *County of Orange, supra,* 82 Cal.App.3d 833, 838.)

*Vangas, Inc.* (1981) 30 Cal.3d 268 [179 Cal.Rptr. 30, 637 P.2d 266], neither of which is helpful to his cause. In *Renteria,* this court interpreted the exclusivity provision of Labor Code section 3601 to allow an exception for a civil suit by an employee against an employer seeking "compensation for mental suffering caused by extreme and outrageous misconduct by an employer." Such behavior, we concluded, constituted a "class of civil wrongs outside the contemplation of the workers' compensation system." (*Id.* at p. 841.) Thus, *Renteria* was consistent with *Unruh* in restricting the exception to cases of "extreme and outrageous" conduct.[5]

In *Bell* v. *Industrial Vangas, Inc., supra,* 30 Cal.3d 268, an employee, who was injured by a defective product manufactured by his employer, sued the latter alleging strict liability in tort. Applying the dual capacity doctrine, the court held that Labor Code section 3601 did not bar suit against an employer who also acted in an entirely separate capacity as a manufacturer. Thus *Bell,* like *Duprey,* was a garden-variety case of dual capacity; the employer filled two separate and distinct roles. Here, it is Great American's delay in payment (allegedly in bad faith and with malicious intent) and its effort to settle the claim (also allegedly in bad faith), which are said to constitute the independently tortious activity. However, as the cases previously cited have ruled, mere delay in payment is not so far removed from the carrier's normal behavior as to constitute a separate sphere of activity, and the mere allegation of bad faith does not, without more, transform the offense into the sort of extreme and outrageous conduct which occurred in *Unruh.*

As the court in *Depew* v. *Hartford Acc. & Indem. Co., supra,* 135 Cal. App.3d 574, concluded " 'It follows that based upon what we have explained, the exclusive jurisdiction over such matters correctly reposes in the Workers' Compensation Appeals Board, and irrespective of what suspected evil motives plaintiff wishes to ascribe to such delay, [she] simply cannot allege a cause of action based upon the delay . . .' " (*Id.* at pp. 578-579, quoting *Everfield* v. *State Comp. Ins. Fund, supra,* 115 Cal.App.3d 15, 21.)

In sum, because of the many times which section 5814 has been utilized and applied in identical cases, we conclude that the complaint fails to state a cause of action because the subject matter thereof is within the exclusive jurisdiction of the Workers' Compensation Appeals Board. The trial court therefore properly sustained the demurrer without leave to amend.

---

[5]Great American contends, because Cervantes alleged physical as well as mental and emotional injuries, that his suit for intentional infliction of emotional distress is barred. (See *Ankeny* v. *Lockheed Missiles & Space Co.* (1979) 88 Cal.App.3d 531, 536 [151 Cal.Rptr. 828].) Our holding that the matter is within the exclusive jurisdiction of the Board makes it unnecessary to reach this question.

## DISPOSITION

The judgment is affirmed.

Morris, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied March 29, 1983, and appellant's petition for a hearing by the Supreme Court was denied May 18, 1983.