[No. E002362. Fourth Dist., Div. Two. Aug. 13, 1986.]

JESUS SOTO et al., Plaintiffs and Appellants, v.
ROYAL GLOBE INSURANCE COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Heiting & Irwin and James Otto Heiting for Plaintiffs and Appellants.

Grace, Neumeyer & Otto, Richard A. Neumeyer and David A. Belofsky for Defendants and Respondents.

## OPINION

**McDANIEL, J.**—The action in the trial court was brought by an employee and his family against the employer's workers' compensation carrier, alleging, among other things, both intentional and negligent infliction of emotional distress. The alleged occasion for such distress was defendant insurer's failure to pay timely a workers' compensation award to which the insurer had stipulated in the Workers' Compensation Appeals Board (WCAB) proceeding.[1] Otherwise, the complaint alleged that defendant insurer's behavior in withholding payment of benefits, as noted, was both a violation of section 790.03, subdivision (h)(5), of the Insurance Code,[2] as well as a breach of the implied covenant of good faith and fair dealing.

Without recounting all of the trial court proceedings, it is enough to recite here that defendants' demurrer to plaintiffs' first amended complaint was sustained without leave to amend. In our view, such ruling was correct, and so the judgment of dismissal will be affirmed.

### SYNOPSIS OF FIRST AMENDED COMPLAINT

The complaint upon which the case was finally disposed of in the trial court contained four counts. In the first, after the customary "housekeeping" allegations, plaintiffs alleged that plaintiff Jesus Soto was employed by Clow Corporation and "that said employer provided workers' compensation insurance for its employees through defendant insurer."

Paragraph VI of the first count alleged "That it was, at all times herein mentioned, reasonably anticipated and expected by defendants, and each of them, that JESUS SOTO did have a family and that the moneys due him would also benefit and be expected by the rest of the family as set forth in paragraph

---

[1]Simultaneously, Jesus Soto, the employee plaintiff, had pursued before the WCAB his remedy in the form of the 10 percent penalty imposed by section 5814 of the Labor Code for failure to pay benefits awarded.

[2]The cited statute provides, "The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance . . . (h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices . . . (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear."

VI above. The family as set forth in paragraph VI has been injured in the same manner as plaintiff JESUS SOTO.''

Subsequent paragraphs set forth the details of plaintiff Jesus Soto's industrial injury, the workers' compensation benefits awarded on account of such injury and that there had been a delay in paying the benefits awarded.

Thereafter, paragraph XIII alleged, ''That plaintiffs are entitled to the benefits sought herein, as acknowledged by defendant insurer's stipulation to the request for award, and that plaintiffs have made every good faith attempt possible to recover said benefits prior to filing this cause of action, and that defendant insurer's actions in refusing payment have been, and continue to be, oppressive, malicious and in reckless disregard for the well being of the plaintiffs herein.''

Paragraph XIV alleged, ''That defendant insurer has not attempted in good faith to effectuate a prompt, fair and equitable settlement of plaintiffs' claim in accordance with *Insurance Code,* Section 790.03, despite a clear obligation to do so, and that such refusal constitutes an unfair and deceptive practice in the business of insurance and undermines the effectiveness and intent of the workers' compensation system.''

Paragraph XV alleged, ''That the defendant insurer, by unreasonably and in bad faith withholding payment of plaintiffs [*sic*] claim, breached a duty, imposed by law, requiring it, as a fiduciary, to act fairly and in good faith in discharging its responsibilities to the plaintiffs herein.''

Paragraph XVI alleged, ''That as a direct and proximate result of defendant insurer's failure to effect a prompt, fair and equitable settlement of plaintiffs' claim, despite a clear obligation to do so, plaintiffs have suffered severe personal injuries, all to plaintiffs' general damage in an amount within the jurisdiction of this court.''

Finally, as part of the first count, paragraph XX alleged, ''That as a direct and proximate result of defendant insurer's acts and omissions as herein alleged, plaintiffs have suffered severe emotional and mental distress and anguish, all to their general damage in an amount within the jurisdiction of this Court.''

The second count incorporated most of the first by reference and proceeded to allege that the insurance contract between Clow Corporation and defendant had been made for the benefit of plaintiff Jesus Soto and his family.

The third count incorporated all of the first and second by reference, and proceeded to allege further, "That defendant insurer's aforementioned egregious conduct was intentional and malicious and done for the purpose of causing plaintiffs to suffer humiliation, mental anguish, emotional and physical distress, and severe financial hardship, and plaintiffs have, and continue to, suffer such humiliation, mental anguish, emotional and physical distress and severe financial hardship."

The fourth count incorporated all of the previous three, and proceeded to allege "That defendant insurer's aforementioned egregious, wanton and wilful conduct is responsible for negligently causing plaintiffs to suffer humiliation, mental anguish, emotional and physical distress and severe financial hardship."

As earlier noted, defendants' demurrer to plaintiffs' first amended complaint was sustained without leave to amend. This appeal followed.

## Discussion

Plaintiffs have cast their assignments of error in the form of "Questions Presented." The three questions do not accurately reflect the theories upon which their first amended complaint was framed. In our view, plaintiffs have undertaken to recover on four theories, all focusing on defendant insurer's failure to pay timely the WCAB award to plaintiff Jesus Soto. Such theories are: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) defendant insurer's alleged violation of section 790.03, subdivision (h)(5), of the Insurance Code, which in pertinent part, has already been quoted in the margin; and (4) breach of the implied covenant of good faith and fair dealing.

By reason of the fact that there are multiple plaintiffs, being the employee on one hand and members of his immediate family on the other, our view of the case is that there are five separate issues presented. All of the four theories noted, as applied to plaintiff employee, involve only a single issue. As to plaintiff family members, there are four issues reflecting the four theories noted.

Turning first to an analysis of the plaintiff employee's posture vis-à-vis the four theories noted, all of his assignments of error, as hereinafter explained, were properly rejected; in sum, his attempt to state a cause of action in tort on any theory is precluded by the exclusive remedy rule.

Under section 3602 of the Labor Code[3] the exclusive remedy of an employee against his employer and the employer's workers' compensation carrier is the right to recover compensation in a WCAB proceeding. However, in *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616 [102 Cal.Rptr. 815, 498 P.2d 1063], the Supreme Court announced a judicially created exception to the exclusive WCAB remedy prescribed by section 3602. Thus, the key question to be resolved in pursuing our analysis is whether defendant insurer's behavior here, in the form of an alleged wilful refusal to pay timely the workers' compensation benefits to which it had stipulated, falls within the *Unruh* exception, an exception which allows the aggrieved employee to seek damages otherwise from his employer's compensation carrier in a superior court action.

■ More particularly, notwithstanding the statutory language noted, if the insurer has engaged in tortious conduct removing it from its proper role as an insurer while engaged in its processing of a workers' compensation claim, another avenue of recovery is open to the aggrieved employee. (*Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d 616, 630.) ■ In *Unruh,* after plaintiff had initiated with the WCAB a claim for workers' compensation, certain unusual events ensued. As recounted in the *Unruh* opinion, "About April 10, 1964, defendants, and their employees, acting in the scope of their employment, placed plaintiff under surveillance in Long Beach. Defendant Baker 'befriended the plaintiff and did in the City of Long Beach and elsewhere misrepresent his capacity and his intentions toward the plaintiff.' On specified dates, for the purpose of obtaining motion pictures of plaintiff, defendants 'did entice and cause the plaintiff to conduct herself in a manner beyond her usual and normal physical capabilities . . . .' In particular defendants enticed plaintiff to visit Disneyland with defendant Baker, in the unseen presence of defendant Marino, where Baker caused plaintiff to cross a rope bridge and a barrel bridge and 'did wilfully and intentionally violently shake and disturb said bridges and the physical person of the plaintiff, and the defendants did at said place cause the plaintiff to engage in other activities so as to aggravate and injure the plaintiff.' These events were filmed by defendant Marino.

"Plaintiff did not know at any time that she was under surveillance, that defendant Baker had misrepresented his capacity, or that defendant Marino

[3]Section 3602 of the Labor Code, in pertinent part, provides, "(a) Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is . . . the sole and exclusive remedy of the employee or his or her dependents against the employer, and the fact that either the employee or the employer also occupied another or dual capacity prior to, or at the time of, the employee's industrial injury shall not permit the employee or his or her dependents to bring an action at law for damages against the employer."

was photographing her activities. At the instance and invitation of Baker, plaintiff had been caused 'to become emotionally interested' in him.

"On April 30, 1964, defendants negligently exhibited at a hearing of the Industrial Accident Commission (now the Workmen's Compensation Appeals Board) [fn. omitted] the motion pictures of plaintiff taken while she was under surveillance. Upon learning of 'the ruse and deception' practiced on her by defendants, plaintiff suffered a physical and mental breakdown requiring hospitalization. This breakdown was proximately caused by defendants' negligent exhibition of the films described, and by defendants' negligent failure to properly control their agents and employees 'as to the limit, scope and manner of their investigation,' and as to 'the possible risk of injury to plaintiff therefrom.' As a proximate result of the above conduct of defendants, plaintiff sustained 'injury to her nervous system and person,' in the sum of $500,000 general damages, and special damages for medical and other expenses and wage loss, past and future, in sums to be determined." (*Id.*, at pp. 620-621.)

Defendant insurer's demurrer was sustained and, in reversing the judgment of dismissal, the Supreme Court said ". . . we are unable to conclude that a compensation insurer *remains within its proper role as such,* when, as in the instant case, through its agents or others employed by it, such insurer intentionally embarks upon a deceitful course of conduct in its investigations which causes injury to the subject to the investigation. We cannot give our approval to such misconduct which tramples upon the employee's rights, by deeming it no more than the normal behavior of the insurer. In *Redner* v. *Workmen's Comp. Appeals Bd.* (1971) 5 Cal.3d 83, 95 [95 Cal.Rptr. 447, 485 P.2d 799], concerning similar investigatory conduct of a compensation carrier, we said: 'Evidence obtained by fraud and deceit in violation of the rights of the applicant, however, is not "best calculated to ascertain the substantial rights of the parties and carry out *justly* the *spirit* and provisions" of the workmen's compensation laws. The high purposes of the compensation law should not be perverted by resort to evidence perfidiously procured.' (Original italics.) Our condemnation in *Redner* leaves no doubt that such conduct goes beyond the normal role of an insurer in a compensation scheme intended to protect the worker. (Lab. Code, § 3202; see *Pacific Emp. Ins. Co.* v. *Ind. Acc. Com.* (1945) 26 Cal.2d 286, 288-289 [158 P.2d 9, 159 A.L.R. 313].) A deceitful investigation, in place of an honest one, frustrates the laudable objectives of the workmen's compensation law. Permitting the employee to maintain an action at law for the insurer's intentional torts will subserve these objectives but at the same time will not discourage the insurer from fulfilling its proper role in the compensation scheme." (*Id.*, at p. 630, italics added.)[4]

---

[4]However, the *Unruh* court also held that mere negligent performance by the carrier's

In *Unruh,* as explained above, the Supreme Court concluded that the conduct which it otherwise branded as outrageous could not possibly have been intended to be the subject of protection by the statutory, exclusive-remedy shield. Plaintiff employee in the case here argues that the alleged behavior of defendant insurer amounts to the same kind of outrageous conduct condemned by the Supreme Court in *Unruh.* We do not agree.

The result on the issue here under discussion is controlled by *Cervantes v. Great American Ins. Co.* (1983) 140 Cal.App.3d 763 [189 Cal.Rptr. 761]. *Cervantes* also involved an appeal from a judgment of dismissal after defendant insurer's demurrer had been sustained without leave to amend. There, the allegations of the complaint disclosed substantially more egregious conduct by the insurer than here. In *Cervantes,* there was an initial refusal even to investigate the claim, and the payment of benefits there occurred only after an application had been filed and processed to a successful conclusion before the WCAB.

In the case here, plaintiff employee, as his central charging allegation, has accused defendant insurer of a wilful delay in payment of benefits after it stipulated to plaintiff employee's entitlement thereto in a WCAB proceeding, and that this provides the basis for reliance on the *Unruh* exception. In *Cervantes,* exactly the same argument was advanced as is done by plaintiff employee here. In *Cervantes,* we rejected the argument, marshalling no less than six decisions which declined in similar circumstances to hold that the behavior of the insurer was such as to remove the workers' compensation carrier from its *proper role* as such. (See *Denning v. Esis Corp.* (1983) 139 Cal.App.3d 946, 948 [189 Cal.Rptr. 118]; *Droz v. Pacific National Ins. Co.* (1982) 138 Cal.App.3d 181 [188 Cal.Rptr. 10]; *Depew v. Hartford Acc. & Indem. Co.* (1982) 135 Cal.App.3d 574 [185 Cal.Rptr. 472]; *Fremont Indemnity Co. v. Superior Court* (1982) 133 Cal.App.3d 879 [184 Cal.Rptr. 184]; *Ricard v. Pacific Indemnity Co.* (1982) 132 Cal.App.3d 886 [183 Cal.Rptr. 502]; *Everfield v. State Comp. Ins. Fund* (1981) 115 Cal.App.3d 15 [171 Cal.Rptr. 164].)

As pointed out in *Cervantes* and in several of the cited cases, the Workers' Compensation Act contains a specific penalty for unreasonable delay in payment of benefits (Lab. Code, § 5814). Thus, plaintiff employee has a

---

agent did not constitute actions beyond the carrier's normal sphere of activity. "We can find no justification either in statutory or policy considerations for treating the negligent carrier as no longer acting as a carrier but rather as a third party." (*Unruh v. Truck Insurance Exchange, supra,* 7 Cal.3d 616, 628.) The court's reasoning in *Unruh* has been criticized. Larson, *Nonphysical Torts and Workmen's Compensation* (1975) 12 Cal. Western L.Rev., 1, 15, confesses some puzzlement over why "an insurer ceases to be an insurer when it does its job tortiously."

remedy under the Act for the kind of insurer behavior here alleged, and that remedy is exclusive. (Lab. Code, § 3602.)

What we have said with reference to plaintiff employee's efforts to plead a cause of action falling within the *Unruh* exception to exclusive WCAB jurisdiction, in the first instance, has involved the matter of intentional infliction of emotional distress. Because plaintiff employee, for the reasons we have stated, has failed to state such a cause of action, a fortiori he has likewise failed to succeed in placing himself *beyond WCAB jurisdiction* on the theory of negligent infliction of emotional distress and on the theory of a grievance based on any breach of the implied covenant of good faith and fair dealing, or any supposed violation of section 790.03, subdivision (h)(5), of the Labor Code. (*Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d 616, 628; see also fn. 4, *supra; Cervantes* v. *Great American Ins. Co., supra,* 140 Cal.App.3d 763, 774.)

■ We now come to the grievances of the other plaintiffs, i.e., the employee's family members.

One who is not a party to the insurance contract and the accompanying implied covenant of good faith and fair dealing may not maintain an action for breach of the covenant. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 576 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Austero* v. *National Cas. Co.* (1976) 62 Cal.App.3d 511, 516 [133 Cal.Rptr. 107].) Insofar as the plaintiff family members seek relief as third-party beneficiaries of the workers' compensation insurance policy, a doubtful proposition in view of the fact the employer is required by law to carry workers' compensation insurance, the tort action of the family members likewise would be barred by the exclusive remedy statute just the same as that of the plaintiff employee. (Lab. Code, § 3602; cf. *Argonaut Ins. Co.* v. *Superior Court* (1985) 164 Cal.App.3d 320, 324 [210 Cal.Rptr. 417].)

■ ■ Turning next to the alleged intentional infliction of emotional distress on plaintiff family members, such a cause of action can be maintained only when the conduct of defendant has been so outrageous that no person in a civilized society should be required to bear it. ■ Such a rule is of course easy to state but only can be applied with certainty in light of the holdings in decided cases which have determined that the questioned conduct before them was or was not outrageous.

In *Schlauch* v. *Hartford Accident & Indemnity Co.* (1983) 146 Cal.App.3d 926 [194 Cal.Rptr. 658], the insurer had delayed two and one-half years before tendering policy limits in an obvious-liability, third-party context. In the bad-faith litigation which followed, plaintiff's third cause of action

alleged that the insurer had acted outrageously and *with intent to inflict emotional distress* in violation of its statutory duties under section 790.03 of the Insurance Code. The insurer's demurrer to this cause of action was sustained, and on appeal, the reviewing court stated, "We finally note one additional flaw in plaintiff's pleading. The third cause of action simply asserts that Hartford acted outrageously and with intent to inflict emotional distress. The failure to accept an offer of settlement or the violation of statutory duties under Insurance Code Section 790.03 does not in itself constitute the type of outrageous conduct which will support a cause of action for intentional infliction of emotional distress. (See *Ricard* v. *Pacific Indemnity Co.* (1982) 132 Cal.App.3d 886, 894 [183 Cal.Rptr. 502]; *Beckham* v. *Safeco Ins. Co. of America* (9th Cir. 1982) 691 F.2d 898, 904.) The demurrer was properly sustained on the third cause of action without regard to the remainder of our discussion. If plaintiff is to state a cause of action on amendment of the pleadings he must allege with greater specificity the acts which are ' "so extreme as to exceed all bounds of that usually tolerated in a civilized community" ' (*Ricard* v. *Pacific Indemnity Co., supra,* 132 Cal.App.3d at p. 894.)" (*Schlauch* v. *Hartford Accident & Indemnity Co., supra,* 146 Cal.App.3d 926, 936.)

In *Ricard,* the case relied on by *Schlauch,* plaintiff sustained an injury to his back in the course of his employment by Pacific Indemnity Company's insured. The plaintiff was incapacitated for several weeks following his injury, and he received medical treatment from an orthopedic surgeon who advised him that his disability was chronic, and that he would have disabling recurrences for the rest of his life. Pacific Indemnity paid for separate treatments but failed to pay for plaintiff's fourth treatment. Mr. Ricard filed an action which alleged that the insurer's refusal properly to investigate and process plaintiff's claim and communicate with plaintiff concerning his claim, and its denial of same, were intentional and wilful breaches of its duty to exercise good faith, which resulted in severe emotional distress.

The trial court sustained Pacific Indemnity's demurrer to the complaint on the ground it failed to allege facts sufficient to state a cause of action. In affirming the trial court's ruling, the appellate court stated: "We find also no error in the trial court's sustaining of Pacific's demurrer to the second count, for failure to allege facts sufficient to state a cause of action for intentional infliction of emotional distress. One element of the tort is 'outrageous conduct,' and in order to satisfy that element a defendant's conduct must be 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.' (*Cervantes* v. *J. C. Penney Co.* (1979) 24 Cal.3d 579, 593 [156 Cal.Rptr. 198, 595 P.2d 975].) We believe the trial court was justified in concluding, as a matter of law, that defendant's conduct,

as pleaded, could not be deemed 'outrageous' within that definition. . . ." (*Ricard* v. *Pacific Indemnity Co., supra,* 132 Cal.App.3d 886, 895.)

The conduct alleged in both *Schlauch* and *Ricard,* in terms of its supposed egregious character, was far more aggravated than what was alleged here, and so, on the basis of these two decisions, we hold here, even ignoring that any legal duty of the insurer to pay was owed to the employee and his employer, and not owed to plaintiff family members, that the family members have failed to state a cause of action for intentional infliction of emotional distress.

■ Turning to the negligence theory relied upon by plaintiff family members, it is fair to observe, in nonimpact cases, that there are only two salients in which liability has been successfully established. One such salient is the so-called "direct victim" concept applied in *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518]; the other is the traumatized bystander scenario first recognized in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], which overruled *Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295 [29 Cal.Rptr. 33, 379 P.2d 513], on identical facts.

Without recounting the distressing facts of *Molien,* it is enough here to note that the theory of recovery allowed there was that defendant's negligent conduct, in misdiagnosing the wife and directing her to inform her husband of her misdiagnosed condition, was also directed at plaintiff husband (*Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, 919), in a context in which it was highly foreseeable that his emotional distress would be immense. As stated in *Molien,* "We thus agree with plaintiff [husband] that the alleged tortious conduct of defendant was directed to him as well as to his wife. Because the risk of harm to him was reasonably foreseeable we hold, in negligence parlance, that under these circumstances defendants owed plaintiff [husband] a duty to exercise due care in diagnosing the physical condition of his wife." (*Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, 923.)

On the facts alleged in the case here, it would be a massive contortion of logic to describe defendant insurer's action in delaying payment of plaintiff employee's WCAB award as "directed" at the plaintiff family members (cf. *Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159, 172-173 [216 Cal.Rptr. 661, 703 P.2d 1]). Accordingly, we hold that no cause of action was alleged by these plaintiffs under the *Molien* theory.

Turning to the other salient, *Dillon* has recently been discussed at length in *Ochoa* v. *Superior Court, supra,* 39 Cal.3d 159, where the Supreme Court undertook to comment on, if not interpret, the *Dillon* guidelines.

In *Ochoa,* the parents of a juvenile offender who had died while in the custody of Santa Clara County authorities sued the county, charging it with liability for negligent infliction of emotional distress. The grievance provoking the litigation was the parents' shock and trauma experienced upon seeing their son's need for medical aid ignored by his juvenile hall custodians, a neglect which finally resulted in the son's death.

The county's demurrer to certain of the parents' causes of action was sustained, and the propriety of that trial court ruling was reviewed by petition for writ of mandate. After such review, the Supreme Court authorized issuance of the writ, directing the trial court to vacate the order sustaining the demurrer and to enter a new and different order overruling it. In reaching its decision, the *Ochoa* court appeared to rely heavily on *Dillon,* noting that the touchstone of its "analysis in *Dillon* was foreseeability." (*Id.,* at p. 166.) The court also went further to observe that "[o]ur review of other cases allowing a cause of action for emotional distress under *Dillon* leads us to the conclusion that the 'sudden occurrence' requirement is an unwarranted restriction on the *Dillon* guidelines. Such a restriction arbitrarily limits liability when there is a high degree of foreseeability of shock to the plaintiff and [when] the shock flows from an *abnormal event,* and, as such, unduly frustrates the goal of compensation—the very purpose which the cause of action was meant to further." (*Ochoa* v. *Superior Court, supra,* 39 Cal.3d 159, 168, italics added.)

Thus, *Ochoa* established that there are two requirements for stating a cause of action for negligent infliction of emotional distress: (1) foreseeability of emotional shock resulting from (2) an "abnormal event." Here, even assuming the required element of foreseeability, there is no allegation of any abnormal event, merely an allegation of failure timely to pay workers' compensation benefits.

Applying the *Ochoa* standard, as just recited, to the facts alleged here by the plaintiff family members, it is at once evident that the mere delay in payment of a workers' compensation award to an employee head of the household is not even remotely similar to the kind of abnormal event which will foreseeably trigger the high degree of trauma and distress which the plaintiffs suffered in *Dillon* and *Ochoa.* Thus, plaintiff family members failed to state a cause of action for negligent infliction of emotional distress.

The only decision that might possibly support maintenance of an action for negligent infliction of emotional distress on the facts pleaded here is *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917 [122 Cal.Rptr. 470], a case decided by this court about a decade ago. In that case a judgment against the insurer based upon breach of the implied cov-

enant of good faith and fair dealing was readily affirmed in light of the facts and the authorities regularly relied upon in such cases, i.e., *Fletcher, Gruenberg, Silberg,* plus the earlier cases of *Crisci* and *Comunale.* Nevertheless, the author and his colleagues also purported to decide a separate issue not really presented by the case, namely, *negligent* infliction of emotional distress, more particularly, the propriety of a cause of action to recover emotional distress damages based purely on negligence.

■ Emotional distress damages, if they can be proved, are of course one kind of consequential damages potentially recoverable in an action for the tort of bad faith, a tort otherwise established in *Jarchow.* (*Gruenberg v. Aetna Ins. Co., supra,* 9 Cal.3d 566, 579.) ■ Accordingly, once breach of the implied covenant of good faith and fair dealing had been established in *Jarchow,* it was wholly unnecessary to explore some other theory to provide a predicate for the recovery of damages for emotional distress.

This reality was recognized in *Quezada* v. *Hart* (1977) 67 Cal.App.3d 754 [136 Cal.Rptr. 815], where the court said, "To the extent that the court in *Jarchow* purported to . . . allow recovery for emotional suffering damages in cases involving negligence without bad faith . . ., the extension was unwarranted by California law." (*Id.,* at p. 762.) We agree. In the absence of the *Dillon/Ochoa* criteria, we therefore expressly overrule that portion of the *Jarchow* opinion which purports to recognize a cause of action for recovery of damages for emotional distress based on garden-variety negligence concepts as recited at pages 939-940 of the opinion (text opposite fn. 13).

■ Finally, we come to the plaintiff family members' attempt to plead a so-called *Royal-Globe* type case of action against defendant insurer based upon its alleged violation of section 790.03, subdivision (h)(5), of the Insurance Code.

In *Royal Globe,* the Supreme Court held that an individual who is injured by the alleged negligence *of an insured* may sue the negligent party's insurer for violating the provisions of subdivision (h) of section 790.03 of the Insurance Code. (*Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880, 884 [153 Cal.Rptr. 842, 592 P.2d 329].) Of course, an insured, as a party to the insurance contract can also sue his carrier for violation of any of the provisions. (See *Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d 880, 888.) The question here is whether persons who are neither insureds nor *Royal Globe* type claimants may also bring their own independent action against the insurer under Insurance Code section 790.03.

We are satisfied that only insureds and *Royal Globe* type claimants have any standing to assert alleged violations of these provisions of the Insurance Code. In *Royal Globe* itself, the petitioning insurer and its amici argued strenuously that the statute had never been intended to provide the predicate for a private civil action, but was instead designed as an enforcement tool for the Insurance Commissioner. Responding to this contention, the court stated, "[b]ut an examination of the language of subdivision (h) demonstrates that it was intended to prohibit unfair settlement practices by insurers directed against *both claimants and insureds.*" (*Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d 880, 888, italics added).) The inference clearly to be drawn from this pronouncement is that the court, responding to a contention that no private litigant could pursue an action based upon an alleged statutory violation by an insurer, necessarily, in holding that such actions are possible, *identified the categories of such potential suitors.* In other words, the context in which the language was used indicates, otherwise, that *only* insureds and claimants against the insureds have standing to assert actions of this type against the carrier, for they are the only ones to whom the statutory duty runs.

This proposition was reflected in *Williams* v. *Transport Indemnity Co.* (1984) 157 Cal.App.3d 953 [203 Cal.Rptr. 868]. In *Williams* the widow of a decedent involved in an accident with defendant's insured undertook to file a *Royal Globe* type action against defendant insurer charging violations of section 790.30, subdivision (h) of the Insurance Code. The summary judgment entered in favor of defendant was affirmed on appeal, and, with reference to this phase of plaintiff's effort, the court said, "plaintiff must be deemed an intermeddler without standing to recover for an insurer's violation of the statute." (*Id.,* at p. 964.)

Plaintiff family members nevertheless insist that *Delos* v. *Farmers Insurance Group* (1979) 93 Cal.App.3d 642 [155 Cal.Rptr. 843], resolves the "standing" obstacle in their favor, i.e., they contend that so-called nonclaimants may maintain an action to recover for their emotional distress, because the consequences of the bad faith conduct (emotional distress) toward the insured family members is clearly foreseeable. *Delos* is not authority for such contention. Again *Williams* is in point. "*Delos* does say that, but the court predicated its holding on the fact that *the nonclaimant spouse . . . also was a named insured* to whom the insurer owed a duty. *Delos* does *not* stand for the proposition that an independent duty is owed to a noninsured, nonclaimant spouse." (*Williams* v. *Transport Indemnity Co., supra,* 157 Cal.App.3d 953, 963-964, italics on "not" in original; other italics added.)

Based upon the foregoing analysis, we hold that plaintiff family members have failed to allege facts sufficient to state a cause of action based upon

defendant insurer's alleged violation of section 790.03, subdivision (h)(5), of the Insurance Code.

### DISPOSITION

The judgment of dismissal is affirmed.

Kaufman, Acting P. J., and Dorr, J.,* concurred.

Appellants' petition for review by the Supreme Court was denied October 22, 1986.

---

*Assigned by the Chairperson of the Judicial Council.